**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AKILAH ROGERS,<br><br>               Plaintiff,<br><br>v.<br><br>VOLTRON DATA, INC., *et al.*,<br><br>               Defendants. | Case No. 1:24-cv-00084-RC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Voltron Data, Inc. ("Voltron") and Joshua Patterson ("Patterson") (collectively, "Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(6) and LCvR 7, hereby submit the following Memorandum of Points and Authorities in Support of their Motion to Dismiss the Amended Complaint (ECF No. 9) filed by Plaintiff Akilah Rogers ("Plaintiff" or "Rogers") (ECF No. 5).

## I.     SUMMARY OF ARGUMENT

Plaintiff, a short-tenured former employee of Voltron brings claims of discrimination and retaliation against Voltron and its CEO, Patterson, under various federal statutes.  Specifically, Plaintiff asserts claims of discrimination based on race pursuant to 42 U.S.C. § 1981 and Title VII (Counts I and V) and discrimination based on sex pursuant to the Equal Pay Act and Title VII (Counts III and VI).  Additionally, Plaintiff alleges her termination is the product of retaliation in violation of 42 U.S.C. § 1981, the Equal Pay Act, and Title VII (Counts II, IV, and VII).

While Plaintiff's Amended Complaint asserts a litany of causes of action, requisite factual allegations to maintain those causes of action are lacking.  Not only do Plaintiff's substantive

claims lack factual support, Plaintiff similarly fails to allege sufficient facts to establish that this Court has personal jurisdiction over the Defendants.

Consequently, Plaintiff's Amended Complaint is subject to dismissal for a number of reasons. **First**, Plaintiff fails to allege sufficient facts to establish that this Court has personal jurisdiction over the Defendants. **Second**, Plaintiff's race and sex discrimination claims fail, chiefly because there are no factual allegations establishing a nexus between Plaintiff's race or gender and any adverse employment action. **Third**, Plaintiff's Equal Pay Act claim similarly fails for want of factual allegations to support the claim, as well as the absence of a legally cognizable comparator. **Fourth and finally**, Plaintiff's retaliation claims fail because of the lack of sufficient factual allegations to support the proposition that any alleged adverse employment actions were taken because of Plaintiff's alleged protected activity.

Accordingly, for the foregoing reasons and as expanded upon, *infra*, Plaintiff's Amended Complaint must be dismissed.

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges that she was employed by Voltron for approximately fourteen (14) months, from May 2022 until July 2023, at which point she claims to have been unlawfully terminated. Am. Compl. ¶ 4.  Relevant to her claims of race and sex discrimination, Plaintiff alleges that she is a Black woman.  *Id*.  Rogers alleges that, prior to her employment with Voltron, a non-Black male, Rodrigo Aramburu ("Aramburu"), was performing poorly as Voltron's Chief Operating Officer ("COO"), but that he was not terminated, and was instead transferred to "another important role", Chief Product Officer.  Am. Compl. ¶¶ 5-6.  Rogers alleges that Aramburu's compensation was not reduced, that he continued to perform poorly in his new role, and that Voltron later placed him on an "official performance improvement plan."  Am. Compl. ¶ 6.

Rogers alleges that she was hired "to perform the functions of a COO" and "directly took over Aramburu's role and responsibilities," and that Voltron "compensated her less" than Aramburu, but acknowledges that her title was Vice President ("VP") of Operations, **not** COO. Am. Compl. ¶¶ 4-5, 7.  While Rogers acknowledges that she was not hired as the COO, she claims to have been hired to perform "substantially similar work" and "took on leadership of HR, legal, finance, business operations, and communications," areas which she claims had previously been under Aramburu's "leadership" as COO.  Am. Compl. ¶¶ 5, 7, 9.  Rogers alleges that she performed well during her first year of employment, and that the company's Chief Executive Officer ("CEO"), Patterson, had no substantive criticisms of her and regularly told her that she was one of the "best hires" he had made at Voltron.  Am. Compl. ¶ 10.  Notably, Plaintiff alleges that she was hired by Voltron "[a]t Patterson's direction", and that Patterson, who she now claims to have discriminated against her on the basis of her race, "is [also] Black."  Am. Compl. ¶¶ 7, 14.

Rogers claims that she received "dramatically less equity" than her "predecessor" (presumably, Aramburu), and "the other male and non-Black VPs," but does not identify the quantity or amount of her equity as opposed to her alleged male and non-Black comparators.  Am. Compl. ¶ 11.  Rogers alleges that, in April 2023, she "asked Patterson for a title change and an increase in equity", purportedly to "put her on a level playing field with similarly situated men at the company."  Am. Compl. ¶ 12.  Patterson allegedly recognized that Plaintiff had a "Great Year 1", but denied Rogers' request, stating that "we're not there yet."  Am. Compl. ¶ 13.  Rogers alleges that, in May 2023, she again raised the issue of her request for a title change and additional equity directly to Patterson, and described her situation as "the plight of the professional Black woman", to which "Patterson (who is Black) didn't disagree" and stated words to the effect of "this is what we deal with."  Am. Compl. ¶ 14.

Rogers alleges that, around April 2023, she raised the issue of her request for a title change and "equal pay" to the recently hired VP of Human Resources, Mike Smart ("Smart").  Am. Compl. ¶ 16.  At this time, Rogers claims to have articulated her belief that "she had to overperform while being underpaid and underpromoted because she was a Black woman."  *Id.*  Rogers alleges that Smart stated that he had seen this happen with women, "especially Black women."  *Id.*

Rogers claims that, over the ensuing weeks, Patterson "began undermining and disparaging Rogers publicly", and "attacked [her] on email chains … undermined her in front of her team … [and] heavily curtailed her decision-making authority," and that she "reported most of these incidents to Smart" and stated to Smart that "she believed Patterson was discriminating and retaliating against her, a Black woman", although Plaintiff recognizes that Patterson, at whose "direction" Voltron hired Plaintiff, is also Black.  Am. Compl. ¶¶ 7, 14, 17, 18.

Rogers claims that Voltron and Patterson then "undertook a campaign to force [her] from her job" and that Smart "attempted to convince Rogers that she no longer wanted to work at the Company in hopes she would resign," but that Rogers made clear that she had "no intention or desire to leave."  Am. Compl. ¶ 21.  Rogers alleges that Voltron "retaliated" against her in several ways, including by diminishing her job by taking away her responsibilities and delegating them to her subordinates.  Am. Compl. ¶ 22.

Ultimately, Rogers alleges that she was terminated from her employment with Voltron on July 10, 2023, approximately three months after her "request to be given the COO title and equal pay, and only weeks after she directly accused Defendants of discriminating and retaliating against her."  Am. Compl. ¶ 23.  Rogers alleges that Voltron and Patterson claimed that her position was being eliminated.  *Id.*  Rogers alleges that she was the first senior employee of Voltron whose termination was made effective immediately and without prior written notice of major misconduct,

and that her treatment contrasted with Voltron's gentle treatment of men who were failing to perform their duties.  Am. Compl. ¶¶ 24, 25.  However, Rogers does not allege with any specificity, let alone factual support, that her termination was the product of racial or sex-based bias on the part of Voltron or Patterson.  Am. Compl. ¶ 23.

## III.    STANDARD OF REVIEW

### A.  Rule 12(b)(2)

Fed. R. Civ. P. 12(b)(2) provides for dismissal where the Court lacks personal jurisdiction over a party against whom a claim for relief is asserted.  "On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." *NAWA USA, Inc. v. Bottler*, 533 F. Supp. 2d 52, 55 (D.D.C. 2008) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)).  "The plaintiff must allege specific facts connecting the defendant with the forum." *Id*. (citing *Second Amendment Found. V. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)).  Further, "[s]uch a showing must be made with respect to each defendant individually." *Id*. (citing *Overseas Partners, Inc. v. PROGEN*, 15 F. Supp. 2d 47, 50 (D.D.C. 1998)).  In determining whether personal jurisdiction may be exercised over a defendant consistent with due process, this Court will look to the D.C. long arm statute, D.C. Code § 13-423, which "is given an expansive interpretation that is coextensive with the due process clause." *Id*. (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004)). Therefore, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry." *Id*. (quoting *United States v. Ferrara*, 54 F.3d 825, 828) (D.C. Cir. 1995).

It is well-established that, in determining whether this Court may exercise personal jurisdiction over a given defendant consistent with due process, the question is whether the Defendants "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (citing *Helmer*, 393 F.3d at 205) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  Such minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987).  In other words, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

## B.  Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for dismissal where an action fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In that regard, "a complaint must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist."  *Hall v. Nielsen*, 2018 WL 5840663, at *8 (D.D.C. Nov. 8, 2018) (citing *Williams v. District of Columbia*, 9 A.3d 484, 488 (D.C. 2010)).  Moreover, the facts alleged "must be

enough to raise a right to relief above the speculative level." *Twombly*, *supra*, 550 U.S. at 555.  A claim must be dismissed when it fails to "set forth sufficient facts to establish the elements of a legally cognizable claim."  *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1059-60 (D.C. 2014).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true … and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Shaker v. Middle E. Media Rsch. Inst., Inc*., 2023 WL 5174339, at *2 (D.D.C. Aug. 11, 2023) (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  However, the Court "need not accept as true … an inference unsupported by the facts set forth in the complaint."  *Id*. (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

## IV.    ARGUMENT

### A.  The Court Lacks Personal Jurisdiction Over the Defendants.

The Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) on the basis of lack of personal jurisdiction.  Notably, while the Amended Complaint contains a statement of the basis for the Court's exercise of subject matter jurisdiction over this action, Plaintiff has failed to articulate a basis for this Court to exercise personal jurisdiction over Defendants Voltron and Patterson, and the Amended Complaint is subject to dismissal on this ground alone.  Am. Compl. ¶ 1; *NAWA USA, Inc.*, 533 F. Supp. 2d at 55 (plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendants) (citing *Crane*, 894 F.2d at 456).

As alleged in the Amended Complaint, Voltron is incorporated in the State of Delaware and is headquartered in San Francisco, California.  Am. Compl. ¶ 2.  Patterson is alleged to be a

resident of South Carolina.  Am. Compl. ¶ 3.  While Plaintiff alleges that she presently resides in the District of Columbia, that is the only nexus to this jurisdiction alleged in the Amended Complaint.  Am. Compl. ¶ 4.  Plaintiff fails to allege sufficient facts in the Amended Complaint to establish that Defendants have the necessary minimum contacts with the District of Columbia for this Court to exercise personal jurisdiction over them.  Further, the Amended Complaint does not contain sufficient allegations to establish that Plaintiff's claims arise out of any of the provisions of the District of Columbia long-arm statute.  *Id.*; *see also* D.C. Code § 13-423.  For these reasons, the Amended Complaint should be dismissed.  *See, e.g., NAWA USA, Inc.*, 533 F. Supp. 2d at 58 (dismissing claim for lack of personal jurisdiction where the plaintiff failed to allege sufficient facts to establish that defendants had the necessary minimum contacts with the forum or that the provisions of the D.C. long arm statute were satisfied).

Indeed, Plaintiff fails to allege facts sufficient to establish that: (i) Defendants transacted business in the District of Columbia; (ii) contracted to supply services in this jurisdiction; (iii) caused tortious injury in this jurisdiction by an act or omission in this jurisdiction; (iv) caused tortious injury in this jurisdiction by an act or omission outside of the District of Columbia and that Defendants regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from the District of Columbia.  *See* D.C. Code § 13-423(a).  Not only does Plaintiff fail to allege facts sufficient to establish that Defendants engaged in any of the acts identified in the D.C. long-arm statute, Plaintiff fails to allege that her claims arise out of any of those acts, as required for the Court to exercise personal jurisdiction over them pursuant to the D.C. long-arm statute.  *See* D.C. Code D.C. Code § 13-423(b).

In light of the fact that Plaintiff has (i) failed to allege a basis for this Court to exercise personal jurisdiction over the Defendants; (ii) failed to allege facts sufficient for the Court to find

that Defendants have the necessary minimum contacts with this jurisdiction to enable the Court to exercise personal jurisdiction over them consistent with due process; and (iii) failed to allege facts sufficient to establish that her claims arise out of any of the acts enumerated in the D.C. long-arm statute, the Amended Complaint should be dismissed for lack of personal jurisdiction.

**B. Plaintiff Has Failed to State a Claim of Discrimination Under 42 U.S.C. § 1981.**

In order to state a *prima facie* claim of discrimination in violation of 42 U.S.C. § 1981, Plaintiff must allege facts sufficient to establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 123 (D.D.C. 2005) (citing *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)) (internal quotations omitted).

While Plaintiff's Amended Complaint may allege facts sufficient to establish the first two elements of her claim, that she is a member of a protected class and that she suffered an adverse employment action (i.e., termination), she fails to allege sufficient facts to establish that any unfavorable employment action(s) give rise to an inference of discrimination, and therefore this claim fails. As articulated above, the Court "need not accept inferences [that are] unsupported by the facts set out in the complaint." *Owens v. Dynalectric Co., Inc.*, No. CV 17-1680 (ABJ), 2018 WL 11491735, at *1 (D.D.C. May 14, 2018) (citing *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Nor must the Court "accept legal conclusions cast as factual allegations." *Hettinga*, 677 F.3d at 476.

"Under D.C. Circuit law, there can be no reasonable inference of racial discrimination where an individual just happens to be a member of a protected class—actionable discrimination only occurs when [the] employer acts '***because of***' the plaintiff's status as a member of a protected class." *Washington v. Chao*, 577 F. Supp. 2d at 42 (citing *Brady v. Off of Sergeant at Arms*, 520

F.3d 490, 493 (D.C. Cir. 2008)) (emphasis added).  Here, Plaintiff fails to allege facts sufficient for the Court to infer that Voltron's adverse employment action (i.e., termination) was taken "because of" her status as a member of a protected class.

Further, Plaintiff alleges that (i) she was hired "[a]t Patterson's direction"; (ii) Voltron's Board "invariably followed Patterson's recommendations regarding personnel", and (iii) she was terminated following her requests to Patterson for a change in title and an increase in equity in the company.  Am. Compl. ¶¶ 7, 13, 23.  In this context, the same-actor inference applies to Plaintiff's § 1981 claim, and the reasonable inference to be drawn is that Voltron's termination of Plaintiff's employment was not based upon an unlawful discriminatory motive.  *See, e.g., Thompson v. HICAPS Inc*., 628 F. Supp. 3d 292, 303 (D.D.C. 2022) ("Under the so-called 'same-actor' inference, 'when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire, especially when the firing occurred only a short time after the hiring.'") (citing *Vatel v. All. Of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)); *see also Richardson v. Petasis*, 160 F. Supp. 3d 88, 114 (D.D.C. 2015).  Here, Plaintiff alleges that she was hired "[a]t Patterson's direction" (Am. Compl. ¶ 7), and claims to have been terminated by Voltron, whose Board "invariably follow[s] Patterson's recommendations regarding personnel" (Am. Compl. ¶ 13), less than fourteen (14) months later.  Under the same-actor inference, such facts do not give rise to an inference of racial discrimination under 42 U.S.C. § 1981.

Moreover, Plaintiff alleges that she and Patterson are members of the same protected class (Am. Compl. ¶¶ 4, 14), which also "weighs against any inference of discrimination." *Johnson v. Perez*, 66 F. Supp. 3d 30, 38 (D.D.C. 2014) (citing *Washington v. Chao*, 577 F. Supp. 2d. 27, 42 n. 8 (D.D.C. 2008)); *see also Hammond v. Chao*, 383 F. Supp. 2d 47, 58 (D.D.C. 2005).

This Court has previously dismissed similarly baseless and unfounded claims of race discrimination.  For example, the Court has held that a plaintiff's "occasional reference to his race in his amended complaint" was "insufficient to make out a section 1981 action."  *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011).  The *Ndondji* Court held that "a plaintiff 'cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue [section 1981] relief'" but rather, "'[a] plaintiff must allege some facts that demonstrate that his race was the reason for [a] defendant's actions.'"  *Id.* (citing *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)).

Other cases in this Court have arrived at similar results.  *See Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) (dismissing section 1981 claim when plaintiff's complaint only made a conclusory allegation of race discrimination but failed to allege that the "disparate treatment was racially motivated"); *Alexander v. Wash Gas Light Co.*, 481 F. Supp. 2d 16, 31 (D.D.C. 2006) (dismissing section 1981 claims when plaintiff only stated that he is African-American, but failed to "[plead] any facts or [make] any suggestion of racially discriminatory motive."); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 138 (D.D.C. 2005) (dismissing section 1981 claim when plaintiff did not offer any evidence that he was singled out on the basis of his racial or ethnic characteristics).  Indeed, this Court has held that "there must be some connection between [plaintiff's] race and the adverse employment actions."  *Owens v. Dynalectric Co., Inc.*, *supra* at *3 (citing *Mekuria v. Bank of Am.*, 883 F. Supp. 2d 10, 15 (D.D.C. 2011) ("At the end of the day, [p]laintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two.  Such supposition is not enough.")).

Like the plaintiff in *Ndonji*, Rogers makes only conclusory statements that her race was a reason for her treatment at Voltron (e.g., her statement that it is the "plight of the professional Black woman" to be underpaid and underpromoted) (Am. Compl. ¶ 14.), but fails to make any allegations that support an inference that her termination and/or Voltron's alleged decision not to promote her were based upon an unlawful, discriminatory, race-based motive. The Plaintiff's occasional reference and invocation of her race throughout the narrative of the Amended Complaint is insufficient to state a viable claim of race discrimination, particularly when the Court considers that the individual that allegedly was responsible for her hiring and firing is a member of the same protected class as Plaintiff. For these reasons, Count I of Plaintiff's Amended Complaint should be dismissed.

### C. Plaintiff Has Failed to State a Claim of Race or Sex Discrimination Under Title VII.

In order to state a claim of discrimination under Title VII, a Plaintiff must allege facts sufficient to show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 123 (D.D.C. 2005) (citing *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)). Specifically, Title VII makes it unlawful for an employer to discriminate against any individual "***because of*** such individual's race, color, religion, sex, or national origin." *Heavans v. Dodaro*, 648 F. Supp. 3d, 1, 13 (D.D.C. 2022) (citing 42 U.S.C. § 2000e-2(a)(1)) (emphasis added). "Under Title VII, 'the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) ***because of*** the plaintiff's race, color, religion, sex, [or] national origin.'" *Id.* (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)) (emphasis added).

Here, again, while Plaintiff may have alleged facts sufficient to establish the first two elements of her claim, that she is a member of a protected class and that she suffered an adverse employment action (i.e., termination), she has failed to allege sufficient facts to establish that any unfavorable employment action gives rise to an inference of discrimination on the basis of race or sex, or that the Plaintiff suffered an adverse employment action "because of" her race or sex, as required to state a claim of discrimination under Title VII.

Plaintiff's claim of race discrimination in violation of Title VII fails for the same reasons set forth in Section IV(B), *supra*, with respect to her § 1981 claim.  *See Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d at 123 ("The standards and order of proof in section 1981 cases have been held to be identical to those governing Title VII disparate treatment cases.") (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F. 2d 1395, 1413, n. 7 (D.C. Cir. 1988)).

As for Plaintiff's claim of sex discrimination in violation of Title VII, Plaintiff has similarly failed to allege facts sufficient to give rise to an inference of discrimination, but rather, like her claim of race discrimination, merely invokes her sex throughout the Amended Complaint's narrative and claims that Voltron "compensated her less" (Am. Compl. ¶ 7) and that she was given "less equity" than her "similarly situated" non-Black and male counterparts (Am. Compl. ¶¶ 11, 12), without alleging any facts to support that she did, in fact, receive less equity, or that she was, in fact, paid less than her "similarly situated" male counterparts.[1]  Such threadbare allegations, devoid of factual support, are insufficient to state a claim of sex discrimination under Title VII.

---

[1] Indeed, Plaintiff has failed to allege sufficient facts to establish that any of the unidentified "male and non-Black VPs" (Am. Compl. ¶ 11) constitute legally cognizable comparators for purposes of her discrimination claims.  Nor has Plaintiff alleged sufficient facts to establish that Aramburu constitutes a legally cognizable comparator, due to the vague description of the alleged overlap in their job duties (Am. Compl. ¶¶ 5, 7, 9), as articulated in greater detail in Section IV(E), *infra*.  *See Burley v. Nat'l Passenger Rail Corp.*, 33 F. Supp. 3d 61, 73 (D.D.C. 2014), aff'd, 801 F.3d 290 (D.C. Cir. 2015) (granting summary judgment in favor of defendant on plaintiff's Title VII sex discrimination claim and holding that, to constitute a proper comparator for purposes of Title VII, "all of the relevant aspects of [the employees'] employment situations must have been nearly identical.") (citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)) (cleaned up).

*See Heavans*, 648 F. Supp. 3d. at 14-15 (dismissing Title VII sex discrimination claim where plaintiff failed to adequately allege a causal connection between adverse employment actions and the plaintiff's sex); *see also Wasserman v. Ahuja*, No. CV 21-0026 (ABJ), 2023 WL 157319, at *7–8 (D.D.C. Jan. 11, 2023) (dismissing Title VII sex discrimination claim and finding that "there are no allegations in the complaint that support a reasonable inference that [plaintiff] was fired because of her sex.").  In order to sustain a Title VII sex discrimination claim, Plaintiff "must identify factual allegations that at least show 'a nexus between defendants' alleged discriminatory motive and the adverse action.'" *Id.* (citing *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017)).  Plaintiff has failed to meet this burden.  For these reasons, Counts V and VI of Plaintiff's Amended Complaint should be dismissed.

### D.  Plaintiff Has Failed to State a Claim of Retaliation Under § 1981 or Title VII.

In order to state a claim of retaliation in violation of 42 U.S.C. § 1981 and Title VII, Plaintiff must allege facts sufficient to establish that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (§ 1981); *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006) (Title VII).  "Protected activity" under § 1981 and Title VII includes complaints of discrimination by the employee to the employer.  *Uzoukwu v. Metro Washington Council of Governments*, 27 F. Supp. 3d 62, 70 (D.D.C. 2014) (§ 1981); *Holcomb, supra*, 433 F.3d at 902.  An "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009).

Here, Plaintiff alleges that she engaged in protected activity by making complaints of discrimination and retaliation to Smart (Am. Compl. ¶ 18) on unarticulated dates and times after she had requested a title change[2] and increase in equity from Patterson in April 2023 (Am. Compl. ¶ 12) and again in May 2023 (Am. Compl. ¶ 14).  Rogers claims that, after these requests were denied, Patterson began undermining her and curtailing her decision-making authority.  Am. Compl. ¶ 17.  Plaintiff alleges that Smart attempted to convince her that she no longer wanted to work at Voltron in the hopes that she would resign.  Am. Compl. ¶ 21.  Plaintiff claims that Defendants retaliated against her in "several ways", including by diminishing her and her job by taking away her responsibilities and delegating them to her subordinates.  Am. Compl. ¶ 22.

These alleged facts are insufficient to state a viable claim of retaliation under 42 U.S.C. § 1981 and Title VII.  While Plaintiff alleges she engaged in protected activity by making complaints of discrimination, she fails to allege that she suffered an adverse employment action that was causally connected to this protected activity, as she must, in order to state a claim of retaliation.  *See Harris*, 791 F.3d at 68; *see also Holcomb*, 433 F.3d at 901-02.  Plaintiff's allegations that Patterson undermined her and curtailed her decision-making authority, took away her responsibilities and delegated them to her subordinates, do not constitute adverse employment actions, because they do not constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Douglas*, 559 F.3d at 552 (D.C. Cir. 2009).  These

---

[2] To the extent that Plaintiff is claiming discrimination based on Voltron's failure to promote her to the position of COO, this argument falls short because Plaintiff has failed to allege that she was applying to an open position at the company.  *See, e.g., Alston v. Johnson*, 208 F. Supp. 3d 293, 301 (D.D.C. 2016) ("A failure to promote is an adverse action *so long as there is an open position*.") (citing *Stella v. Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2002)) (emphasis added).  *See also Yarber-Butler v. Billington*, 53 F. App'x 120, 120–21 (D.C. Cir. 2002) (Failure to promote is generally an adverse action … *but not if there is no open position*).  "In other words, if there is no vacancy in the job sought, the plaintiff cannot establish a prima facie case."  *Id.* (citing *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000)) (internal quotations omitted).

alleged actions are also untethered to any of Plaintiff's protected traits.  Plaintiff was not reassigned to a new position with different responsibilities, and the only fact alleged in support of her allegation that Defendants took away her responsibilities was that Patterson bypassed Rogers on an unidentified date by going "directly to members of her team for an important funding report." Am. Compl. ¶ 22.  This is not sufficient to support a claim of retaliation.

Nor has Plaintiff alleged facts sufficient for the Court to infer that her termination was causally related to her protected activity.  Indeed, Plaintiff does not allege *any* facts to support such an inference, other than the mere temporal proximity of her complaints of discrimination and her subsequent termination.  Am. Compl. ¶ 23.  The Supreme Court has held that, when timing is the only circumstantial evidence presented for a causal connection, "the temporal proximity must be *very close*." *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001) (emphasis added). There is no "bright-line" rule with respect to temporal proximity.  *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012).  However, this Court has consistently rejected gaps of well under a year as insufficiently close to give rise to an inference of causation.  *See, e.g., Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013) ("[T]his Circuit has generally found that a two- or three-month-gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation."); *see also Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting a period of "two and one-half months" and citing with approval cases from other Circuits rejecting periods of only two months).

In the absence of an obvious causal connection or facts sufficient to support an inference of such a causal connection, Plaintiff has failed to plausibly allege that her termination was the product of retaliation "because of" her alleged protected activity.  For this reason, Counts II and VII of the Amended Complaint should be dismissed.

**E.  Plaintiff Has Failed to State a Claim of Discrimination Under the Equal Pay Act.**

In order to state a prima facie claim of a violation of the Equal Pay Act, Plaintiff "must show that [her] employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 712 F.2d 1488, 1491 (D.C. Cir. 1983) (citing 29 U.S.C. § 206(d)(1)); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (legislative history clarifies that plaintiff must make these threshold showings).  The allegations set forth in Plaintiff's Amended Complaint entirely fail to meet this burden.  A recent case is instructive.

In *Savignac v. Day*, 539 F. Supp. 3d 107 (D.D.C. 2021), a plaintiff asserted a claim under the Equal Pay Act against her employer, a large law firm (Jones Day), alleging that male associates of the same level of seniority, in the same practice group, and in the same office, were paid a higher annual salary.  The plaintiff claimed that she was discriminated against, in violation of the Equal Pay Act, because her employer paid male employees more for equal work on jobs the performance of which required equal skill, effort, and responsibility.  *Id.* at 109.  Nonetheless, this Court dismissed the Equal Pay Act claim because the plaintiff had not adequately alleged that she was doing "substantially equal work" as her alleged comparators.  *Id.* at 110.  For instance, the Court found that plaintiff had "fail[ed] to allege that she worked as many hours or otherwise worked as hard as those who were paid more than she was."  *Id.*

The *Savignac* Court cited a line of D.C. Circuit cases that described the "equal work" requirement under the Equal Pay Act:

[I]n *Laffey v. Northwest Airlines, Inc.*, the D.C. Circuit observed that "equal work" means "that the jobs ... must be 'substantially equal' "—that is, they must involve comparable "skill, effort, or responsibility."  567 F.2d 429, 449 (D.C. Cir. 1976). Second, in *Goodrich v. International Brotherhood of Electrical Workers, AFL-CIO*,

the D.C. Circuit observed that "[t]he initial burden to prove wage disparity and job equality is on the plaintiff" and that the job-equality inquiry "focuses on the primary duties of each job."  815 F.2d 1519, 1523–24 (D.C. Cir. 1987). In both of these decisions, "equal work" and "jobs [that] require[ ] equal skill, effort, and responsibility" are treated as one and the same.  Finally, in *Musgrove v. District of Columbia*, the D.C. Circuit described an EPA plaintiff's burden as follows: she must "show that ... [her employer] paid her male counterparts more money 'for equal work'—that is, for jobs requiring 'equal skill, effort, and responsibility' and 'performed under similar working conditions.' " 458 F. App'x 1 (D.C. Cir. 2012) (quoting *Corning Glass Works*, 417 U.S. at 195, 94 S.Ct. 2223).

*Id*. at 114.  Applying the standards set forth in the above cases in ruling on the plaintiff's motion to reconsider the Court's prior dismissal of her Equal Pay Act claim, the *Savignac* court upheld its prior decision.  *Id.* at 120.  The Court observed that "the complaint offers only a handful of [] allegations relating to job requirements", and that such allegations were "too thin to support a plausible inference that [plaintiff] and the male comparators she identifies worked in jobs 'the performance of which require[d] equal skill, effort, and responsibility…'"  *Id.* at 117.

The *Savignac* Court found that the plaintiff had failed to allege facts "that meaningfully define the 'job' at issue in terms of the actual requirements of the 'job' or functions performed by those employed in that role."  *Id*.  The Court stated that the "concept of 'equal work' requires a showing of common performance requirements, yet the complaint says little about what associates in Jones Day's … practice [group] actually do."  *Id*.  Finally, while acknowledging that "courts have often observed that '[i]n assessing a plaintiff's claim of substantial equality between jobs, a court should rely on actual job performance and content rather than job descriptions, titles, or classifications'", the Court held that plaintiff had failed to allege sufficient facts to plead a *prima facie* claim of an Equal Pay Act violation, and upheld its prior dismissal of that claim.  *Id.* at 118-120.

Similarly, here, Plaintiff fails to allege sufficient facts to state a claim that Voltron and/or Patterson violated the Equal Pay Act.  As an initial matter, she has failed to allege facts sufficient

to show that she was paid different wages than members of the opposite sex.  Plaintiff simply states, in conclusory fashion, that Voltron "compensated her less" than her male "predecessor" (Am. Compl. ¶ 7) and that she received "dramatically less equity" (Am. Compl. ¶ 11), but fails to support these threadbare allegations with any facts whatsoever (e.g., the amount of her compensation or equity as opposed to her male counterparts).

Further, Plaintiff fails to allege a legally cognizable comparator under the Equal Pay Act, because Aramburu was employed by Voltron as its COO, and Plaintiff was hired in a lower-tier position as VP of Operations.  Am. Compl. ¶¶ 4, 5.  These two positions are not "jobs the performance of which requires equal skill, effort, and responsibility", as required to state a claim under the Equal Pay Act.  *Goodrich*, *supra*, 712 F.2d at 1491.  While Plaintiff alleges that Aramburu was responsible for "leadership" of the same general areas of the company that she allegedly took over upon being hired (i.e., human resources, finance, legal, business operations, and communications) (Am. Compl. ¶¶ 7, 9), Plaintiff fails to allege sufficient facts to establish that her position as VP of Operations was a job that entailed "equal work" or that her position, when compared to that of COO, an executive-level position, was a job that required equal skill, effort, and responsibility.  Again, Plaintiff only broadly and in conclusory fashion alleges that she was hired to perform "substantially similar work" as Aramburu, not "equal work", as required to state a claim under the Equal Pay Act.  Am. Compl. ¶ 7; *Goodrich, supra*, 712 F.2d at 1491 (citing 29 U.S.C. § 206(d)(1)).

In *Savignac*, the Court upheld its prior dismissal of an Equal Pay Act claim where the plaintiff alleged that she was employed in the ***same*** role as her alleged comparators because she failed to allege facts sufficient to establish that she was performing substantially "equal work" to her alleged comparators.  *Id*. at 109-110.  Here, Rogers fails to allege any facts whatsoever to

19

support her claim that she was performing "substantially similar" work as her alleged comparator, let alone "equal work". Indeed, as in *Savignac*, Rogers has failed to allege facts that "meaningfully define the 'job' at issue in terms of the actual requirements of the 'job' or functions performed by those employed in that role." *Savignac*, *supra*, 539 F. Supp. 3d at 117. Rather, Rogers makes generalized and conclusory allegations that she was responsible for "leadership" of similar areas of the company, including "human resources, finance, legal, business operations, and communications." Am. Compl. ¶ 9. These conclusory allegations are insufficient to establish that Plaintiff performed "equal work" as her alleged comparator, as required to state a claim under the Equal Pay Act. Accordingly, Count III of Plaintiff's Amended Complaint should be dismissed.

## F. Plaintiff Has Failed to State a Claim of Retaliation Under the Equal Pay Act.

In order to state a claim of retaliation in violation of the Equal Pay Act, Plaintiff must allege facts sufficient to establish that Defendants discharged or discriminated against her ***because*** she complained about pay discrimination on the basis of sex. 29 U.S.C. § 215 (a)(3); *see generally Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 563 U.S. 1, 179 L.Ed.2d 379 (2011). Plaintiffs claim of retaliation under the Equal Pay Act fails for the same reason as those stated in Section IV(D) with respect to her claims of retaliation under 42 U.S.C. § 1981 and Title VII.

Specifically, Plaintiff has failed to allege facts sufficient for the Court to infer a causal connection between her protected activity and her termination, and the facts alleged regarding the alleged diminishment of her job responsibilities are inadequate to support an inference of discrimination or to constitute an adverse employment action. Further, any complaints of discrimination on the basis of race, as opposed to sex, cannot serve as a factual predicate for her Equal Pay Act retaliation claim. *See, e.g., Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51,

57 (D.D.C. 2018) (dismissing Equal Pay Act Claim arising out of alleged termination after Plaintiff complained about unequal pay on the basis of her race and national origin).  For these reasons, Count IV of the Amended Complaint should be dismissed.

V.      **CONCLUSION**

For the reasons set forth herein, Defendants Voltron Data, Inc. and Joshua Patterson respectfully request that the Court grant the instant Motion and dismiss Plaintiff Akilah Rogers' Amended Complaint (ECF No. 5), in its entirety, with prejudice.

Dated:  April 2, 2024                          Respectfully Submitted,

/s/ Spencer D. O'Dwyer
Brian A. Scotti, Esq. (Bar No. 497125)
Spencer D. O'Dwyer, Esq. (Bar No. 888187401)
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
Tel.: 202-399-1009
Fax: 202-800-2999
Email: bscotti@grsm.com
        sodwyer@grsm.com

*Counsel for Defendants Voltron Data, Inc. & Joshua Patterson*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April 2024, a true and correct copy of the foregoing was filed and served upon all parties and counsel of record via the Court's electronic filing system.

/s/ Spencer D. O'Dwyer
Spencer D. O'Dwyer, Esq.