**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AKILAH ROGERS,<br><br>        Plaintiff,<br><br>    v.<br><br>VOLTRON DATA, INC., and JOSHUA PATTERSON,<br><br>        Defendants. | Case No. 1:24-cv-00084-RC<br><br>Judge Rudolph Contreras<br><br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

## I.    INTRODUCTION

After the non-Black male COO mismanaged Voltron Data's operations department, Defendants hired Akilah Rogers ("Rogers"). Voltron Data had confidence that Rogers would right the ship because of her experience and skill set. But because she was a Black woman, Defendants believed they could hire Rogers to perform the same work as a non-Black man at a lower title, with lower pay, and hold her to higher standards. When Rogers resisted the discrimination and asserted her rights to equal treatment and pay, she was swiftly terminated. Because these allegations soar over the liberal federal notice pleading standard, the motion to dismiss should be denied.

## II.    RELEVANT FACTS

Voltron Data is a deep tech data augmentation start-up led by CEO Joshua Patterson ("Patterson"). The company launched in 2021 with over $100 million in funding, and presently, 80% of the company's employees are men (2d Am. Compl. ¶9.) In early 2022, Patterson and Voltron Data (collectively the "Defendants") hired Akilah Rogers ("Rogers") as Vice President

of Operations, replacing Rodrigo Aramburu ("Aramburu"), a non-Black male who had previously and unsuccessfully led the company's operations. (*Id.* ¶10).

Rogers, a Harvard MBA, immediately improved Voltron Data's operations. She reorganized the human resources, legal, business operations, and communications departments, transforming the previously disorganized and ineffective company into a more professional and efficient environment (*Id.* ¶¶15–16). Patterson consistently recognized Rogers's performance, praising her work and acknowledging her as one of his best hires. (*Id.* ¶ 17).

In April 2023, after a successful first year at the company, Rogers requested a title change and an increase in equity to match her male peers (*Id.* ¶ 19). Despite acknowledging her excellent performance, Patterson refused her request, falsely asserting that she needed to manage sales in addition to her current responsibilities to qualify for the COO position (*Id.* ¶ 21). Rogers pointed out that her male predecessor, Aramburu, had been appointed COO without managing sales, highlighting the disparity in treatment based on her race and gender. (*Id.*) Patterson did not dispute Rogers's observation, acknowledging the challenges faced by Black people in professional settings (¶21).

After Rogers raised concerns about her discriminatory treatment, Patterson's behavior toward her changed. He began undermining her in public, removing her from key projects, and curtailing her decision-making authority (*Id.* ¶ 24). Rogers reported these incidents to Mike Smart, the VP of HR, who acknowledged that Rogers was effectively functioning as the COO and recognized the discrimination she was facing (*Id.* ¶ 23).

In July 2023, less than three months after her request for a title change and equity increase, and only weeks after she accused Defendants of discrimination and retaliation, Defendants summarily fired Rogers (*Id.* ¶ 30). Defendants falsely claimed that her position was

being eliminated (*Id.* ¶ 30). Rogers's termination marked the first time in Voltron Data's history that it fired a senior employee effective immediately and without prior notice or performance warnings (*Id.* ¶ 31). In stark contrast, Defendants regularly permitted male employees who performed poorly or even completely abandoned their jobs, to remain in their positions. (*Id.* ¶¶ 32–33).

Defendants' discrimination and retaliation against Rogers caused her significant financial and career damages, as well as severe emotional and mental distress (*Id.* ¶¶ 36–37).

Defendants now move to dismiss Rogers's complaint, arguing that she has failed to sufficiently plead her claims of discrimination and retaliation under 42 U.S.C. § 1981, The Equal Pay Act, and Title VII of the Civil Rights Act of 1964 ("Title VII").

## III.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure require complaints to contain only a "short and plain statement of the claim" that gives the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Federal Rules do not contain any heightened pleading standards for employment discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514–15 (2002). Thus, Plaintiffs have no obligation to plead the elements of a *prima facie* case. *See Id.* at 515; *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) (recognizing that *Twombly* reaffirmed *Swierkiewicz,* and that *Iqbal* said nothing about this issue). In fact, alleging "'I was turned down for a job because of my race,' accompanied by factual allegations that render that claim plausible, are 'all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6).'" *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 169–74 (D.D.C. 2016) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000)), and denying dismissal of discrimination claim); *Potts v.*

*Howard Univ. Hosp.*, 258 F. App'x 346, 347 (D.C. Cir. 2007) (quoting *Sparrow* and reversing

dismissal of discrimination and retaliation claims); *Rouse v. Berry*, 680 F. Supp. 2d 233, 236–38

(D.D.C. 2010) (quoting *Sparrow* and denying dismissal of discrimination claim).

 This low threshold is appropriate because a motion to dismiss under Rule 12(b)(6) does

not test a plaintiff's ultimate likelihood of success on the merits; rather, it assesses whether a

plaintiff has properly stated a claim. *See Brewer v. District of Columbia*, 891 F. Supp. 2d 126,

130 (D.D.C. 2012). In deciding a motion to dismiss, the court simply presumes the factual

allegations of the complaint to be true and construes them, which gives the plaintiff the benefit of

all inferences that can be drawn from those facts. *See, e.g.*, *Ofisi v. BNP Paribas, S.A.*, 77 F.4th

667 (D.C. Cir. 2023). When a complaint contains sufficient factual matter to state a claim to

relief that is plausible on its face, dismissal under Rule 12(b)(6) is impermissible. *Ashcroft v.

Iqbal*, 556 U.S. 662, 677 (2009).

### IV. ANALYSIS

#### A. Rogers States a Claim of Race Discrimination Under 42 U.S.C. § 1981 Because She Suffered Adverse Employment Actions Due to Her Race.

 Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the

United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a). A

plaintiff states her claim for racial discrimination under Section 1981 by alleging that (1) she is a

member of a protected class, (2) she suffered an adverse employment action, and (3) the

unfavorable action gives rise to an inference of discrimination" *Brown v. Sessoms*, 774 F.3d

1016, 1022 (D.C. Cir. 2014) (internal quotation marks and citation omitted). And as the D.C.

Circuit explains, a "plaintiff's initial burden is not onerous." *Wright v. Eugene & Agnes E. Meyer

Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850

F.3d 461, 467 (D.C. Cir. 2017)).

Rogers alleges ample facts to support an inference of discrimination. First, Rogers alleges that she had to "overperform while being underpaid and underpromoted because she was a Black woman," yet Voltron did not treat her predecessor, Aramburu, a non-Black male, the same (2d Am. Compl. ¶ 21). Rogers alleges that she was unfairly compensated less than non-Black and underperforming men who, unlike her, received titles and compensation commensurate to the work they performed. (*Id.* ¶¶ 13, 32). Rogers also alleges that her performance was exemplary and praiseworthy; Patterson was overjoyed with her performance until the moment she raised concerns about the discriminatory treatment she faced and demanded to be treated fairly (*Id.* ¶¶ 17, 24, 27). These allegations are sufficient to give rise to an inference of discrimination.

Courts regularly find similar allegations sufficient. In *Wright*, for example, the defendant moved to dismiss the plaintiff's § 1981 claim, arguing that she did not plead facts sufficient to give rise to an inference of discrimination. The district court granted the motion and plaintiff appealed. *Wright*, 68 F.4th at 616–17. In the complaint, the plaintiff alleged that unlike her white predecessor and other non-African American employees, she was subjected to adverse employment actions (defamation) and subsequently terminated. *Id*. at 622–23. To support an inference of discrimination, the plaintiff also alleged a culture of discrimination at defendant's company and that she faced a stark change in her evaluations. *Id*. The court found these allegations sufficient to survive a motion to dismiss, reversing the lower court's decision. In doing so, the court stressed, over defendant's objections, the importance of the low bar at the pleading stage, and that allegations regarding comparators, pretext, and racial comments are not required. *Id.* at 623.

Here, Defendants argue that Rogers does not allege that they terminated her because of her race. Rogers easily pleads discriminatory termination, as Defendants summarily terminated

her with no notice while granting soft landings to similarly situated non-Black employees with severe performance issues. (2d Am. Compl. ¶¶ 9, 31) Additionally, Rogers faced many adverse actions beyond termination. An adverse employment action is any action that effects an employee's terms, conditions, or privileges of employment.[1] *Chambers v. District of Columbia*, 35 F.4th 870, 874-75 (D.C. Cir. 2022). Paying an employee less because of their race is clearly an adverse action, and here, Rogers plainly alleges that her non-commensurate compensation was "because she was a Black woman." (2d Am. Compl. ¶ 21).

This is a far cry from what Defendants argue (at 9) is "occasional reference to race." Defendants misleadingly quote this Court's decision in *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011), in which the plaintiff expressly alleged "discrimination based on national origin, not race." *Id.* at 273. While Defendants characterize the *Ndondji* complaint as "deficient," it was in fact so well-pled that the employer did not even try to dismiss the Title VII and DCHRA claims. *Id.* at 272. Rather, this Court merely held that a national origin claim— which is not covered by § 1981—does not transform into a § 1981 race claim simply by occasionally mentioning the plaintiff's race. *Id.* at 273.  This Court explained that race and national origin  are "ideologically distinct categories." *Id.* at 273. And while the plaintiff expressly alleged the national origin of comparators, he "never identifie[d] the races … of other similarly situated employees who were allegedly treated more favorably than he was." *Id.* at 275. None of those defects apply here. Rogers expressly alleges that she was treated worse than similarly situated non-Black employees.

---

[1] Following the recent Supreme Court decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), which held that adverse employment actions need not be "significant," "material," or "serious," courts have uniformly begun overruling prior requirements that plaintiffs show adverse actions are "significant" under § 1981. *See, e.g.*, *Collins v. Union Pac. R.R. Co.*,— F. 4th —, 2024 WL 3515859, at *2 (8th Cir. 2024).

In another ill-fated attempt to bolster their argument, Defendants cite a line of cases to support dismissal of Rogers's § 1981 claim, but each are distinguishable. In *Mesumbe v. Howard Univ.*, the court dismissed plaintiff's § 1981 claim because he only provided a conclusory allegation that similarly situated students of different national origin, ethnicity, and race have been treated differently and more favorably. 706 F. Supp. 2d 86, 92 (D.D.C. 2010). Similarly, in *Alexander v. Wash Gas Light Co.*, 481 F. Supp. 2d 16, 31 (D.D.C. 2006) and *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 138 (D.D.C. 2005), the plaintiffs did not plead facts of racially discriminatory motive behind the adverse employment actions. Here, Rogers alleges that she was underpaid and underpromoted "because she was a Black woman," but Voltron did not treat her predecessor, Aramburu, a non-Black male, the same (2d Am. Compl. ¶ 21).

Defendants further argue that two inferences should be taken in *their* favor on this Rule 12(b)(6) motion: (1) since Patterson hired Rogers, the "same actor inference weighs against an inference of discrimination; and (2) Patterson and Rogers are members of the same protected class. At the outset, both of these "inferences" violate the fundamental precept that all inferences are taken in favor of the non-moving party on a motion to dismiss. This Court must "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Ofisi*, 77 F.4th at 671. Tellingly, Defendants' cases all resolved motions for summary judgment, and some expressly hold that these inferences would not suffice *even at summary judgment*, because "the D.C. Circuit has made clear that [the same actor] inference alone is not sufficient to keep a case from the jury." *Thompson v. HICAPS Inc.*, 628 F. Supp. 3d 292, 303 (D.D.C. 2022). Indeed, *Thompson denied* summary judgment in relevant part, because "[t]his inference cannot on its

own eliminate the genuine dispute of material fact in this case. Therefore, summary judgment for defendant HICAPS is improper." *Id.* at 303–04.

Regardless, neither of Defendants' improperly requested inferences in their favor is an appropriate basis for dismissal. The same actor inference fails for several reasons. First, the inference "is just that, an inference" that "cannot immunize" against liability. *Richardson v. Petasis*, 160 F. Supp. 3d 88, 115 (D.D.C. 2015) (quoting *Ragsdale v. Holder*, 668 F.Supp.2d 7, 23 (D.D.C.2009)); *see also Czekalski v. Peters*, 475 F.3d 360, 369 (D.C. Cir. 2007). In *Czekalski*, the D.C. Circuit explained that, while the same actor inference "is probative evidence against a claim that a hiring official 'harbored a general animus' against those of the plaintiff's protected classification, it 'cannot immunize' 'from liability for subsequent discrimination', nor is it alone sufficient [grounds for summary judgment]." 475 F.3d at 368–69. Here, at the motion to dismiss stage, certainly the inference cannot be grounds for dismissal. Further, courts that have employed the inference have generally done so at the proof stage of the *McDonnell Douglas* analysis, not the motion to dismiss stage. *See e.g.*, *Vatel v. Alliance of Auto. Mfrs*., 627 F.3d 1245, 1247 (D.C.Cir.2011); *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002).

Moreover, as courts in this circuit have routinely held, the inference is inappropriate when a significant period of time has elapsed between the hiring and the discriminatory action. *See, e.g.*, *Richardson*, 160 F. Supp. 3d 88 (quoting *Vatel*, 627 F.3d 1245). In *Richardson*, the court—again, at the summary judgment stage—declined to apply the inference where over a year passed between when the defendant hired plaintiff and when the alleged discrimination occurred. *Id.* at 113. Here, similarly, over a year has passed between Rogers's hire and the alleged discriminatory conduct. Finally, the inference is uniquely inappropriate here, because Rogers alleges that Defendants discriminated against her at her hiring: Patterson hired her as a lower-

paid Vice President to perform the same work as her non-Black predecessor performed as a higher-paid COO. (2d A. Compl. ¶ 21). Clearly, if discrimination is present at the hiring, any inference that the person who did the hiring is not a discriminator is negated.

Next, the fact that Patterson and Rogers are members of the same protected class is irrelevant and does not warrant dismissal. Defendants rely on a footnote in *Washington v. Chao*, a summary judgment case, to argue against an inference of discrimination. 577 F.Supp.2d 27, 42 n.8 (D.D.C. 2008). Defendants' argument should be rejected out of hand, especially at the motion to dismiss stage. There is thus no same-protected-group exception to federal civil rights laws, as courts. "There is no question that a black [person] may consciously or unconsciously discriminate against another black [person] and be liable under Title VII." *Eccleston v. Sec. of Navy*, 700 F. Supp. 67 (D.D.C. 1988). "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda v. Partida*, 430 U.S. 482, 499 (1977); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (holding men can discriminate against other men); *Ross v. Douglas Cnty., Neb.*, 234 F.3d 391 (8th Cir. 2000) (applying *Oncale*'s reasoning to same-race discrimination). Defendants' argument against this settled law depends on mis-application of summary judgment authorities. In *Washington v. Chao*, the court rejected the plaintiff's race discrimination claim because, on review of the record after discovery, there was no evidence that the employer knew the plaintiff's race. *Id.* at 41. In a footnote, the court noted in passing that the decisionmaker shared a race with the plaintiff, but found that fact "far from dispositive." *Id.*; *see also Johnson v. Perez*, 66 F. Supp. 3d 30, 38 (D.D.C. 2014) (finding that this fact was "far from dispositive" in summary judgment decision). These cases do not support dismissing a complaint, especially where a plaintiff has sufficiently

alleged discrimination. Indeed, accepting all the allegations in the complaint as true, these two inferences, alone or together, cannot support dismissal of Rogers's well plead discrimination claims.

**B.   Rogers States A Claim Of Race And Sex Discrimination Under Title VII And The D.C. Human Rights Act**

D.C. federal courts generally interpret the D.C. Human Rights Act as operating in parallel to Title VII. *Kennedy v. Berkel & Co. Contractors*, No. 17-cv-1248, 2020 WL 4903896, at *5 (D.D.C. Aug. 20, 2020); *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 84 (D.D.C. 2019) (discrimination claims); *Omwenga v. United Nations Found.*, 244 F. Supp. 3d 214, 223 (D.D.C. 2017) (retaliation claims). "To make out a case for discrimination at the motion-to-dismiss stage, Plaintiff need only allege that she (1) suffered an adverse employment action (2) because of [her] . . . race or sex." *Garza v. Blinken*, 2023 WL 2239352, at *4 (D.D.C. Feb. 27, 2023) (quoting *Jianqing Wu v. Special Couns., Inc.*, 54 F. Supp. 3d 48, 52 (D.D.C. 2014)).

Here, again, Defendants focus on Rogers's termination while ignoring the other adverse employment actions she faced, namely, that she was denied commensurate pay and title because of her race and sex. Throughout the complaint, Rogers alleges that she was paid less and denied a promotion and raise because she was Black and because she was a woman. Rogers pleads that when she asked Patterson for a title change and additional equity to align with her non-Black male counterparts, Patterson acknowledged her performance but refused her request. (*Id.* ¶ 21). He set higher standards for her than for her non-Black male counterparts. (*Id.*). Rogers complained to Patterson that she faced higher standards because she was a Black woman, which he did not dispute, and in fact acknowledged that this was a common plight Black women faced in the workplace. (*Id.*).

To attempt to rebut Rogers's clear and sufficient pleading, Defendants confusingly rely on summary judgment cases to argue that Rogers needs to identify a comparator by name and include a specific amount she was compensated less to survive a motion to dismiss. However, such specificity is simply not required at the complaint stage. *See Jianqing Wu*, 54 F. Supp. 3d 48; *Gordon*, 778 F.3d at 161–62 (*prima facie* case of discrimination or retaliation is not a pleading requirement).

### C. Rogers States Claims Of Retaliation Under Title VII, § 1981, and the DCHRA Because Voltron Data Subjected Her to Adverse Employment Actions After She Complained Of Pay Disparities

A plaintiff can state a claim of retaliation under Title VII, § 1981, or the DCHRA under a single framework; by alleging that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (§ 1981); *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006) (Title VII); *Omwenga*, 244 F. Supp. 3d 214, 223 (DCHRA). "Protected activity" includes complaints of discrimination by the employee to the employer. *Richardson v. Gutierrez*, 477 F.Supp.2d 22, 27 (D.D.C.2007).

On a motion to dismiss, a plaintiff alleging retaliation "can meet her prima facie burden of causation simply by alleging that the adverse actions were caused by her [engaging in] protected activity." *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007); *see Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (noting that "in order to survive a motion to dismiss, 'all the complaint has to say' is 'the [defendant] retaliated against me because I engaged in protected activity.'" (first alteration in original) (quoting *Sparrow v. United Air Lines*, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000)).

Rogers's complaint goes far beyond what is required. Rogers pleads that after an indisputably successful first year at Voltron Data, she requested a title change to COO and additional equity to match her male, non-Black predecessor and similarly situated male peers (2d Am. Compl. ¶ 19). Despite acknowledging her outstanding performance, Patterson refused her request and set higher standards for Rogers than he had for her predecessor (*Id.* ¶ 21). When Rogers pointed out that she was being held to a different standard because of her race and gender, Patterson began to undermine and disparage her publicly. (*Id.* ¶ 21). He attacked her on email chains and Slack channels, removed her from key projects and leadership meetings, disinvited her from decision-making processes, and curtailed her authority (*Id.* ¶ 24).

Patterson escalated his retaliatory conduct by expressing anger that Rogers had involved HR in her complaints, falsely claiming that there was "no so-called glass ceiling" at Voltron Data, and unjustly criticizing her performance despite having praised her previously. (*Id.* ¶ 26–27). Following Rogers's complaints, Defendants launched a campaign to force Rogers out, including bypassing her for important responsibilities and attempting to convince her to resign (*Id.* ¶¶ 28–29). When these efforts failed, Defendants summarily fired Rogers, under the pretext of eliminating her position, even though she was performing essential operational functions. (*Id.* ¶ 30). Rogers's retaliatory termination contrasted sharply with the lenient treatment of underperforming employees who had not engaged in protected activity, who were allowed to remain in their roles without consequence. (*Id.* ¶ 32).

As the above factual allegations demonstrate, Rogers has sufficiently alleged that she engaged in protected activity and suffered adverse employment actions because of it.

### D.  Rogers States Equal Pay Act Violations Because Voltron Data Paid Her Less Than The Man She Replaced and Terminated Her When She Complained About It

The Equal Pay Act ("EPA") provides that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," with exceptions not raised here. 29 U.S.C. § 206(d)(1). The EPA also forbids an employer from retaliating against an employee who complains of EPA violations. *Id.* "The Act targets an 'endemic problem of employment discrimination;' it is a 'broadly remedial' statute, which firmly establishes as federal law the 'principle of equal pay for equal work regardless of sex.'" *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 712 F.2d 1488, 1489–90 (D.C. Cir. 1983) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 190, 195, 208 (1974)).

Rogers plausibly pleads EPA violations. First, she alleges unequal pay. Voltron Data "compensated her less than her male, non-Black predecessor." (2d Am. Compl. ¶ 13). This included receiving "dramatically less equity than her predecessor and the other male . . . VPs," and "equity is one of the most important and valuable forms of compensation" at Voltron Data (*Id.* ¶ 18). Rogers also alleges that she twice "asked for her equity to be increased to put her on a level playing field with similarly situated men at the company" and that Patterson refused. (*Id.* ¶¶ 19–21). Contrary to Defendants' argument (at 17), these are factual allegations— "dramatically less equity," for instance, is not a legal conclusion. Nothing in the EPA or cases interpreting it requires Rogers to plead the par value of Voltron Data stock or the number of shares given to her versus Aramburu. "Dramatically less" is sufficient.

Rogers also plausibly pleads that she was performing equal work. "Equal work under the Act does not mean that the jobs being compared must be 'identical,' but they must be more than

merely 'comparable[.]' . . . The prevailing standard is one of 'substantial equality.'" *Goodrich*, 815 F.2d at 1524 (quoting *Goodrich v. IBEW*, 712 F.2d 1488 (D.C. Cir. 1983)). The complaint straightforwardly alleges that Voltron Data and Patterson "decided to replace Aramburu with someone competent to perform the functions of a COO," (¶ 5) and therefore "hired Rogers," who "directly took over Aramburu's role and responsibilities, reported to the CEO, and was hired to perform substantially similar work" (¶ 7). Under that role, Rogers "took on leadership of HR, legal, finance, business operations, and communications," (¶ 9), directly succeeding Aramburu, who also had "leadership" over "finance, legal, business operations, and communications." (*Id.* ¶ 5). As another Voltron Data executive recognized, she was "basically the COO." (*Id.* ¶ 23).

Defendants also rely heavily on an easily distinguishable opinion, *Savignac v. Jones Day*, 539 F. Supp. 3d 107 (D.D.C. 2021).[2] *Savignac* held that an associate at a law firm could not make out an Equal Pay Act violation simply by noting that she and higher-paid male employees had the same title and level of seniority. *Id.* at 117–18. The court cautioned, however, that the plaintiff "need not establish that every associate in the Issues & Appeals group performs identical duties; she need only allege that, as a general matter, such individuals hold jobs with *similar performance requirements*." *Id.* at 118 (emphasis added).

As Defendants correctly quote—but incorrectly apply—(at 16–17): "In assessing a plaintiff's claim of substantial equality between jobs, a court should rely on *actual job performance and content rather than job descriptions, titles, or classifications*." *Id.* at 118 (emphasis added). "Job descriptions and titles . . . are not decisive. Actual job requirements and performance are controlling." *Prince William Hosp.*, 503 F.2d at 288. Defendants have merely stated the core of Rogers's claim—when a man leads operations, Voltron calls him COO and

---

[2] Jones Day is an entity, but legal databases incorrectly treat it as a person's name. Plaintiff respectfully submits that the case should be captioned *Savignac v. Jones Day*, rather than *Savignac v. Day*.

pays him more; when a woman replaces him, Voltron calls her VP Operations and pays her less. That violates the EPA.

*Savignac* thus highlights the importance of looking past formal titles to assess EPA claims. Just as an associate at Jones Day cannot claim that everyone called "associate" automatically performs equal work, *Savignac*, 539 F. Supp. at 118–19, nor can Defendants claim that a woman called a Vice President of Operations automatically performs unequal work to a man called the Chief Operations Officer, simply by virtue of their titles.

With respect to her Equal Pay Act retaliation claim, Defendants again claim that Rogers failed to plead facts to support a causal connection between her protected activity and her termination. However, as stated in Section III(C), Rogers alleges a wealth of facts which support the inference that her complaint to Patterson about her pay discrepancy kicked off his campaign against her and ultimate termination.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. In the event the Court grants Defendants' Motion to Dismiss in any part, Rogers hereby requests leave to amend her Complaint. "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Dated:  August 14, 2024                      Respectfully Submitted,

                                             STOWELL & FRIEDMAN, LTD.

                                             By:*/s/ George S. Robot*

                                             George S. Robot
                                             Linda D. Friedman (admission application
                                             forthcoming)
                                             **STOWELL & FRIEDMAN, LTD.**
                                             303 W. Madison Street, Suite 2600
                                             Chicago, IL 60606
                                             312-431-0888 (phone)
                                             312-431-0228 (fax)
                                             grobot@sfltd.com
                                             lfriedman@sfltd.com

                                             *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was served upon all parties and counsel of record on August 14, 2024, via the Court's electronic filing system.

*/s/George S. Robot*

**STOWELL & FRIEDMAN, LTD.**
303 W. Madison Street, Suite 2600
Chicago, IL 60606
312-431-0888 (phone)
312-431-0228 (fax)