IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKILAH ROGERS, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-00084-RC |
| VOLTRON DATA, INC., *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Voltron Data, Inc. and Joshua Patterson (collectively "Defendants"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and LCvR 7(d), submit this Reply Memorandum in further support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 15). For the reasons stated herein and more fully set forth in the Memorandum of Points and Authorities in Support of the Motion (ECF No. 15-1), Plaintiff's Second Amended Complaint should be dismissed, in its entirety, with prejudice.

**I.     INTRODUCTION**

Plaintiff's Opposition to Defendants' Motion to Dismiss her Second Amended Complaint is insufficient to avoid dismissal of this case. At bottom, Plaintiff asks the Court to act as a "super-personnel department" to reexamine Defendants' business decisions, which the United States Court of Appeals for the District of Columbia Circuit, and courts around the United States, have repeatedly admonished against. *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). Of course, a Court "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). Moreover,

while Plaintiff's Second Amended Complaint makes clear that she believes she was a top performer and her purported comparator's performance was deficient, her perception matters not. Plaintiff's "own self-perception of her credentials, [are] irrelevant for purposes of establishing discriminatory or retaliatory conduct. It is the perception of the decisionmaker which is relevant." *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 130 (D.D.C. 2009) (internal citations omitted).

Simply stated, while Plaintiff alleges she is a member of protected groups, engaged in protected activity, and was terminated by Defendants, there is a dearth of facts to plausibly allege a nexus. This critical pleading deficiency mandates dismissal of the Second Amended Complaint. Accordingly, for the reasons set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 15-1), and as expanded upon below, Plaintiff's Second Amended Complaint must be dismissed.

## II.   ARGUMENT

### A. Plaintiff's Race Discrimination Claim Pursuant to 42 U.S.C. § 1981 Fails Because the Second Amended Complaint Does Not Plausibly Allege Facts that Any Adverse Action Gives Rise to an Inference of Discrimination.

Plaintiff's Opposition does not demonstrate that she sufficiently alleges a Section 1981 race discrimination claim. Plaintiff primarily relies on *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 623 (D.C. Cir. 2023). *See* Opp'n at 5. However, the Complaint in *Wright* contained more substantial allegations than those set forth in the Second Amended Complaint. Specifically,

> the combination of specific and factually detailed praise, vague and subjective critiques that conflicted with that praise, and an unexpected termination, in addition to the work environment at the Foundation—Wright has plausibly alleged that Goren was motivated by racial animus in her description of Wright to Henson as "toxic" and having created a "negative climate" at work.

*Wright*, 68 F.4th at 623.[1]

Here, unlike the complaint is *Wright*, Plaintiff does not provide sufficient allegations to demonstrate that any of the alleged adverse employment actions[2] were the product of a discriminatory animus based on her race (i.e., *because of* her race). Unlike *Wright*, there are no factual allegations of a culture of racial inequality or the existence of *ad hominin* attacks in the Second Amended Complaint that would push Plaintiff's claim into the realm of plausibility. While Plaintiff argues that she "alleges that she was underpaid and underpromoted 'because she was a Black woman,' but Voltron did not treat her predecessor, Aramburu, a non-Black male, the same," (Opp'n at 7) there are no facts to support the proposition that any purported different treatment was "because of" her race. It is well-settled that "the court need not accept inferences that are unsupported by the facts set out in the complaint." *Garza v. Blinken*, No. 21-CV-02770 (APM), 2023 WL 2239352, at *3 (D.D.C. Feb. 27, 2023) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

---

[1] Additionally, the *Wright* court noted, "we find that Wright cannot maintain a § 1981 claim against Goren individually because, once again, Wright and Goren did not have a contractual relationship." *Wright*, 68 F.4th at 624. Similarly, here, there is no contractual relationship alleged between Rogers and Patterson, which requires the dismissal of the § 1981 claim against Patterson.

[2] Inasmuch as Plaintiff maintain that the Supreme Court's decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) liberalizes what constitutes an adverse employment action, it is important to note that the Court's holding was confined to the challenged job transfer. *Id.* at 346 ("An employee challenging a job transfer under Title VII must show that the transfer brought about some harm with respect to an identifiable term or condition of employment, but that harm need not be significant.") Moreover, a plaintiff challenging an action by an employer must still demonstrate the challenged action was taken "because of" a protected characteristic. *Id.* at 354 ("[Title VII] targets practices that treat a person worse because of sex or other protected trait.") (internal citations and quotations omitted).

Accordingly, Plaintiff's race discrimination claim pursuant to 42 U.S.C. § 1981 (Count I) fails for want of a sufficient, fact-based nexus between her race and any adverse employment action.

### B. Plaintiff's Race and Sex Discrimination Claims[3] Similarly Fail in the Absence of a Factual Nexus Between Her Protected Traits and Any Adverse Employment Action.

Evidently, Plaintiff's race and sex discrimination claims under Title VII and the DCHRA are premised on her subjective belief that if an employee requests an increase in compensation or a promotion, and does not receive the same, this demonstrates a discriminatory animus. *See* Opp'n at 10. In arguing that she has sufficiently stated a claim, Plaintiff fails to meet the substance of Defendants arguments in their Motion to Dismiss. *See* Mot. to Dismiss at 10-12 and 19-20. Plaintiff's discrimination claims are premised on her subjective belief that she was entitled to increased compensation and a promotion, which the Court cannot credit. *See Chavers*, 667 F. Supp. 2d at 130; *see also Alston v. Johnson*, 208 F. Supp. 3d 293, 301 (D.D.C. 2016) ("A failure to promote is an adverse action so long as there is an open position.") (citing *Stella v. Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2002)); *Yarber-Butler v. Billington*, 53 F. App'x 120, 120–21 (D.C. Cir. 2002) (Failure to promote is generally an adverse action … but not if there is no open position). "In other words, if there is no vacancy in the job sought, the plaintiff cannot establish a prima facie case." *Id*. (citing *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000)) (internal quotations omitted).

---

[3] Count V (Race Discrimination in Violation of Title VII); Count VI (Sex Discrimination in Violation of Title VII); Count VIII (Race Discrimination in Violation of the D.C. Human Rights Act); and Count IX (Sex Discrimination in Violation of the D.C. Human Rights Act).

Plaintiff can point to no factual allegation that supports the proposition that any of the alleged adverse employment actions occurred *because of* her race and/or sex. Accordingly, Plaintiff's race and sex discrimination claims pursuant to Title VII and the D.C. Human Rights Act must be dismissed.

    **C.    Plaintiff's Retaliation Claims[4] Fail Because She Fails to Sufficiently Plead a Causal Connection Between Her Protected Activity and Any Adverse Employment Action.**

"To make out a case of unlawful retaliation under Title VII, a plaintiff must show: (1) that, by opposing a practice made unlawful by Title VII, she engaged in a statutorily protected activity; (2) that her employer took a materially adverse action against her; and (3) that there is a causal relationship between the protected activity and the adverse action. The elements of a retaliation claim under the DCHRA and the EPA are the same." *Baker-Notter v. Freedom F., Inc.*, No. CV 18-2499 (RC), 2019 WL 4601726, at *7 (D.D.C. Sept. 23, 2019) (internal citations omitted). Significantly, the United State Supreme Court has held, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

Plaintiff maintains that all she needs to allege to survive a motion to dismiss is "the defendant retaliated against me because I engaged in protected activity." Opp'n at 11 (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006)). This assertion ignores the wealth of authority, including the advert and application the *Twombly-Iqbal* pleading standard and

---

[4] Count II (Retaliation in Violation of 42 U.S.C. § 1981); Count IV (Retaliation – Equal Pay Act); Count VII (Retaliation in Violation of Title VII); and Count X (Retaliation in Violation of the D.C. Human Rights Act).

developments in the case law analyzing retaliation claims. As explained by the Court in *Menoken v. McGettigan*:

> The opinions rely on a sentence in *Rochon v. Gonzales*, in which the D.C. Circuit stated, "in order to survive a motion to dismiss, all the complaint has to say is 'the government retaliated against me because I engaged in protected activity.' " 438 F.3d 1211, 1220 (D.C. Cir. 2006), quoting *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C. Cir. 2000). **But this comment seems to have been lifted out of context and given too much significance and, in any event, it was based upon precedent that applied *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and not *Iqbal*. So notwithstanding the comment in *Rochon*, there is no authority in this Circuit holding that the pleading standards of *Iqbal* do not apply in retaliation cases**.

*Menoken v. McGettigan*, 273 F. Supp. 3d 188, 201–02 (D.D.C. 2017), *aff'd sub nom. Menoken v. Pon*, No. 17-5228, 2018 WL 2383278 (D.C. Cir. May 9, 2018) (emphasis added); *see also E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007).

As discussed in Defendants' Motion to Dismiss, aside from her termination, Plaintiff has not alleged any other cognizable adverse employment actions. *See* Mot. to Dismiss at 13. Nor has Plaintiff pled a sufficient causal connection to her alleged protected activity and any adverse employment action. *Id.* at 13-15. Plaintiff cannot rely on temporal proximity alone to demonstrate causation. *See Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013) ("[T]his Circuit has generally found that a two- or three-month-gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation."); *see also Staley v. Gruenberg*, 575 Fed. Appx. 153, 156 (4th Cir. 2014) ("[T]emporal proximity alone is not sufficient to establish that…protected activity was a 'but for' cause of" an adverse employment action.)

Accordingly, Plaintiff's retaliation claims pursuant to Section 1981, the Equal Pay Act, Title VII, and the D.C. Human Rights Act must be dismissed.

### D.     Plaintiff Fails to Allege Sufficient Facts to Support Her Equal Pay Act Claim.

Plaintiff's Second Amended Complaint fails to allege sufficient facts to demonstrate that she was paid less than any male employee, "for equal work on jobs there performance of which requires equal skill, effort, and responsibility. . ." *See Goodrich v. Int'l Bhd. Of Elec. Workers, AFL-CIO*, 712 F.2d 1488, 1491 (D.C. Cir. 1983). Plaintiff's Opposition fails to directly address Defendants' arguments and focuses on Plaintiff's and her alleged comparator's titles, which is not the thrust of Defendants' argument. *See* Opp'n at 14-15.

It would seem that Plaintiff's Second Amended Complaint focuses on "comparable worth" as opposed to comparable skill, effort, and responsibility. *Compare* 2d Am. Compl. ¶¶ 9-11 (allegations criticizing former COO Aramburu's performance) *with* ¶¶ 15-17 (allegations regarding Plaintiff's outstanding performance). However, "[t]he Supreme Court has declined to endorse the theory of 'comparable worth' in EPA cases, under which plaintiffs might claim increased compensation on the basis of a comparison of the intrinsic worth or difficulty of their job with that of other jobs in the same organization or community." *Baker-Notter v. Freedom F., Inc.*, No. CV 18-2499 (RC), 2022 WL 798382, at *9 (D.D.C. Mar. 15, 2022) (citing *Washington Cnty. v. Gunther*, 452 U.S. 161, 166, 101 S. Ct. 2242, 2246, 68 L. Ed. 2d 751 (1981)).

Moreover, Plaintiff's Second Amended Complaint demonstrates the absence of a legally cognizable comparator, as well as any well-pled factual allegations that Plaintiff's position and the former Chief Operating Officer position required the same "skill, effort, and responsibility." In fact, the allegations demonstrate the roles were substantially different. Plaintiff alleges that "a non-Black male" Rodrigo Aramburu served as Voltron's Chief Operating Officer. 2d Am. Compl. ¶ 9. He "was in charge of Voltron Data's business operations, legal, human resources, IT enterprises, finance, and communications departments." *Id.* Plaintiff further alleges that Aramburu performed

7

poorly in the role of COO and Defendants decided to replace him. *Id.* at ¶¶ 10-11. While Plaintiff claims that she "took over Aramburu's roles and responsibilities" (*id.* at ¶ 12), this assertion is belied by other allegations in the Second Amended Complaint. Indeed, Plaintiff describes the evolution of the company such that the COO role held by Aramburu was not the same role she contends is substantially similar. Specifically, Plaintiff alleges that "the IT enterprise department was moved under Patterson, with operation still managed by the same vice president." *Id.* at ¶ 15. Additionally, Plaintiff alleges that the Voltron "recently hired [a] VP of HR, Mike Smart" (*id.* at ¶ 23), which also demonstrates the substantial differences in Plaintiff's and Aramburu's alleged respective roles. Plaintiff's Opposition offers no compelling contrary argument and she is otherwise constrained by her pleading.

Accordingly, Plaintiff's pay discrimination claim under the Equal Pay Act (Count III) fails as a matter of law and must be dismissed.

## III.   CONCLUSION

For the reasons stated herein and as set forth in the Memorandum of Points and Authorities in Support of the Motion (ECF No. 15-1), Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Complaint, in its entirety, with prejudice.

Dated:  September 18, 2024

Respectfully Submitted,

/s/ Spencer D. O'Dwyer
Brian A. Scotti, Esq. (Bar No. 497125)
Spencer D. O'Dwyer, Esq. (Bar No. 888187401)
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, Virginia 22314
Tel.: 202-399-1009
Fax: 202-800-2999
Email: bscotti@grsm.com
            sodwyer@grsm.com

*Counsel for Defendants Voltron Data, Inc. & Joshua Patterson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September 2024, a true and correct copy of the foregoing was filed and served upon all parties and counsel of record via the Court's electronic filing system.

/s/ Spencer D. O'Dwyer
Spencer D. O'Dwyer, Esq.