**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| AKILAH ROGERS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-84 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| VOLTRON DATA, INC., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff Akilah Rogers sued her employer, Voltron Data, Inc. ("Voltron"), as well as the company's Chief Executive Officer, Joshua Patterson, for race discrimination, sex discrimination, pay discrimination, and retaliation in violation of 42 U.S.C. § 1981, the Equal Pay Act of 1963 ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the District of Columbia Human Rights Act ("DCHRA"). She alleges that Defendants unlawfully compensated her less than her male colleagues of a different race and denied her an equivalent title. She additionally alleges that because she raised the issue with Voltron executives, she experienced retaliation and was eventually terminated. Defendants move to dismiss Rogers's Second Amended Complaint ("SAC"). The Court denies that motion for the reasons discussed below.

**II. FACTUAL BACKGROUND**

According to the allegations in the Second Amended Complaint, which the Court accepts as true at this stage of the litigation, Rogers is a Black woman who worked as Vice President of Operations at Voltron from May 2022 until July 2023. SAC ¶ 3. During the relevant period,

Joshua Patterson served as the company's Chief Executive Officer. *Id.* ¶¶ 2, 8. Rogers alleges that as of early 2022, Rodrigo Aramburu served as Voltron's Chief Operating Officer, overseeing the company's "business operations, legal, human resources, IT enterprise, finance, and communications departments." *Id.* ¶ 9. According to her allegations, the company transferred Aramburu to the role of Chief Product Officer due to poor performance in the COO role, and he was later "placed on an official performance improvement plan." *Id.* ¶¶ 10–11.

In May 2022, Patterson hired Rogers as Vice President of Operations. *Id.* ¶ 12. Rogers alleges that she has "more than a decade of high-level, highly responsible business leadership experience." *Id.* She "directly took over Aramburu's role and responsibilities, reported to the CEO, and was hired to perform substantially similar work." *Id.* ¶ 13. Rogers alleges that after taking over Aramburu's duties, she took a more active role in Voltron's human resources department, improved the company's relationship with legal counsel, and streamlined operations. *Id.* ¶ 15. She also alleges that she "became the senior point person for investor relations," hired and trained "key leaders," and "served as an essential advisor to Patterson . . . and the Company's C-Suite executives." *Id.* ¶ 16. "Patterson regularly told Rogers that she was one of the best hires he had made at the company," *id.* ¶ 17, and informed her that "the Board had praised her background and work," *id.* ¶ 20.

Despite occupying the same role as Aramburu, Voltron "gave Rogers a lower title and compensated her less than her male, non-Black predecessor." *Id.* ¶ 13. She also "received dramatically less equity than her predecessor and the other male and non-Black VPs." *Id.* ¶ 18. In April 2023, "Rogers asked Patterson for a title change and an increase in equity . . . to put her on a level playing field with similarly situated men at the company." *Id.* ¶ 19. Patterson denied

that request, asserting that the three-member board, of which he was a member, would not approve the title change.  *Id.* ¶ 20.

In May 2023, Patterson again refused Rogers's request for a title change and additional equity, informing her that she was required to "manage sales in addition to her current responsibilities if she wanted to be COO."  *Id.* ¶ 21.  When she expressed that these higher standards reflected the "plight of the professional Black woman," Patterson—who Rogers states is Black—"acknowledged that 'this is what we deal with' or words to that effect."  *Id.*  Rogers additionally discussed the request for a title change and equal pay with the Vice President of Human Resources, Mike Smart, who expressed that Rogers was "basically the COO" and that he believed the company was "moving the goalposts" on her.  *Id.* ¶ 23.

Rogers alleges that her professional relationship with Patterson deteriorated after these conversations and that "Defendants undertook a campaign to force Rogers from her job."  *Id.* ¶ 28.  After she "spoke up, requested to be paid on par with men, and attributed her mistreatment to her race and gender," Patterson "began undermining and disparaging Rogers publicly."  *Id.* ¶ 24.  He "attacked Rogers on email chains and Slack channels," "undermined her" in front of others, "suddenly removed her from projects and teams she was leading or part of, disinvited her from key leadership meetings, and heavily curtailed her decision-making authority."  *Id.*  Rogers reported most of these incidents to Smart.  *Id.* ¶ 25.  At one follow-up meeting, "Patterson made clear that he knew of, and was taking action against Rogers because of, her complaints of discrimination . . .[,] express[ed] fury that Rogers had 'brought in' HR," and "asserted that there was 'no so-called glass ceiling' at Voltron."  *Id.* ¶ 26.

Voltron terminated Rogers on July 10, 2023, asserting that "Rogers's position was being eliminated."  *Id.* ¶ 30.  She alleges that male employees who "underperform[ed]" were not often

3

terminated, and that she "was the first senior employee of the Company whose termination was made effective immediately and without prior written notice of major misconduct, ongoing issues regarding the quality of a person's work, and/or multiple verbal warnings." *Id.* ¶ 31.  She compares her treatment to Voltron's treatment of Aramburu, whom the company allowed to shift to multiple roles rather than dismissing him. *Id.* ¶ 32.  She also cites "a different male employee who simply stopped working—abandoning his job for months—remained in his position and continued to draw his salary and accrue unvested equity." *Id.*  She alleges that other men who "were not working their scheduled hours, or performing their duties, remained employed without consequence," and that Patterson "refused to take action against" them. *Id.*  In contrast, "[a]t least three women were forced to leave the Company because of Patterson's and Aramburu's mistreatment and hostility toward them." *Id.* ¶ 14.

Rogers asserts that she filed charges with the Equal Employment Opportunity Commission, *id.* ¶ 59, and she then filed this lawsuit on January 9, 2024, *see* Compl., ECF No. 1.  She filed the operative Second Amended Complaint on May 30, 2024, *see* SAC, ECF No. 13-1, and Defendants moved to dismiss on July 1, 2024, *see* Def.'s Mot. Dismiss Second Am. Compl., ECF No. 15.

### III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim on which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In deciding a motion to dismiss under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.

1994). However, a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal*, 16 F.3d at 1276).

To survive a motion to dismiss, a plaintiff must provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S at 570). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Id*. In deciding a 12(b)(6) motion, the Court may consider "only the facts alleged in the complaint [and] any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

In the context of employment discrimination suits, the plaintiff need not "anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017). Instead, a plaintiff need only allege "facts that, taken as true, render his claim of [discrimination] plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). Yet while a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quotations removed). When evaluating a motion to dismiss an employment discrimination

claim, the "guiding lodestar is whether, assuming the truth of the factual allegations, the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Lawson v. Sessions*, 271 F. Supp. 3d 119, 134 (D.D.C. 2017) (cleaned up).

## IV.  ANALYSIS

The Court addresses Rogers's claims in three parts. The Court first addresses the race and sex discrimination claims before turning to the Equal Pay Act discrimination claim. The Court then examines Rogers's retaliation claims. The Court concludes that Rogers states a plausible claim for relief under each of these theories.

### A.  Race and Sex Discrimination

Rogers claims that she experienced employment discrimination based on her race and sex in violation of 42 U.S.C. § 1981 (Count One), Title VII (Counts Five and Six), and the DCHRA (Counts Eight and Nine). *See* SAC ¶¶ 40–43, 57–66, 73–80. Defendants move to dismiss these claims, arguing that Rogers fails to plausibly allege that the company terminated her because of her race or sex. *See* Defs.' Mem. in Support of Mot. Dismiss Second Am. Compl. ("Mot. Dismiss") at 7, 11, ECF No. 15-1. Defendants additionally assert that only her termination represents an adverse employment action. *Id.* at 13. Rogers responds that she "alleges ample facts" to support her discrimination claims and "faced many adverse actions beyond termination." Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 5–6, ECF No. 17. The Court agrees with Rogers that the SAC alleges facts sufficient to survive Defendants' motion to dismiss.

"Under Title VII . . . the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see also Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)

6

(holding similarly). An employee may establish disparate treatment under Title VII by demonstrating that the employer "has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)). "[I]t is well-established that the D.C. Human Rights Act and Title VII claims are analyzed using the same legal standards." *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 70 n.11 (D.D.C. 2019) (citing *Elhusseini v. Compass Grp. USA, Inc.*, 578 F.Supp.2d 6, 10 n.4 (D.D.C. 2008)).

"[T]o state a claim for racial discrimination under Section 1981, a plaintiff must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011). Section 1981 reaches the full scope of an individual's employment, not just negotiation of the initial employment contract. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 449–51 (2008). "Courts analyze Title VII and Section 1981 employment discrimination claims under similar legal standards." *Olatunji v. Dist. Columbia*, 958 F. Supp. 2d 27, 31 (D.D.C. 2013).

Defendants rely largely on summary judgment caselaw, asserting that Rogers must establish a "*prima facie* claim" at this stage. Mot. Dismiss at 7. However, the prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). At the motion to dismiss stage, the plaintiff must instead "plead sufficient facts to show a plausible entitlement to relief." *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 17 (D.D.C. 2013); *see also Swierkiewicz*, 534 U.S. at 511 (stating that "the ordinary rules for assessing the sufficiency of a complaint apply" to Title VII complaints); *Harris*, 791 F.3d at 70

(examining whether plaintiff's claims were plausible); *Jackson v. Acedo*, No. 08-cv-1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) (concluding that plausibility pleading applies to employment discrimination claims).

      Several of the cases cited in Defendants' motion to dismiss similarly address evidentiary issues instead of the sufficiency of a plaintiff's pleaded facts. *Thompson v. HICAPS Inc.*, for instance, discusses the "same-actor inference" when considering whether there exists a genuine dispute of material fact that might justify sending the case to a jury. 628 F. Supp. 3d 292, 303 (D.D.C. 2022); *see also* Mot. Dismiss at 8. This inference does not apply here, where the Court considers facts alleged in the SAC and not the sufficiency of any evidence. As Rogers also points out, *see* Pl.'s Opp'n at 7–8, this Court denied summary judgment in *Thompson* in part because the inference could not "on its own eliminate the genuine dispute of material fact" in that case. 628 F. Supp. 3d at 303. Defendants additionally cite an inference that is sometimes relevant when "a plaintiff and the person who fired him 'are members of the same protected class.'" *Johnson v. Perez*, 66 F. Supp. 3d 30, 38 (D.D.C. 2014) (quoting *Washington v. Chao*, 577 F. Supp. 2d 27, 42 n.8 (D.D.C. 2008)); *see also* Mot. Dismiss at 8–9. That inference also applies at summary judgment, *see Johnson*, 66 F. Supp. 3d at 33, and Defendants provide no authority for the notion that these evidentiary inferences may sway the Court's analysis at the pleading stage, where the Court must draw all reasonable inferences in favor of the plaintiff. *See Twombly*, 550 U.S. at 555.

      Defendants additionally insist that only Rogers's termination represents an adverse employment action. *See* Mot. Dismiss at 7, 8, 11, 13; *see also* Def.'s Reply in Supp. Mot. Dismiss ("Def.'s Reply") at 6, ECF No. 19 ("As discussed in Defendants' Motion to Dismiss, aside from her termination, Plaintiff has not alleged any other cognizable adverse employment

8

actions."). But Rogers alleges that she received reduced compensation based on her sex and race. *See, e.g.*, SAC ¶ 13. Defendants thus argue that it is not unlawful to compensate a Black woman differently because of her sex and race. That is certainly not the law. The text of Title VII specifically prohibits "discriminat[ing] against any individual with respect to his compensation . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). Section 1981 also states that the right to "make and enforce contracts" extends to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," which naturally includes compensation for labor. 42 U.S.C. § 1981(b); *see also Coward v. ADT Sec. Sys., Inc.*, 140 F.3d 271, 273 (D.C. Cir. 1998) (considering application of regression analysis to wage discrimination claim under § 1981); *Humphries*, 553 U.S. at 450–51 (discussing the broad scope of § 1981 as applied to employment discrimination). There can thus be no dispute that compensating or contracting with Rogers differently based on her race or sex would violate the law.

      Furthermore, according to Defendants, allegations that Patterson "undermined her and curtailed her decision-making authority, took away her responsibilities and delegated them to her subordinates, do not constitute adverse employment actions, because they do not constitute 'a significant change in employment status.'" Mot. Dismiss at 13 (citing *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)). This argument is foreclosed by D.C. Circuit precedent holding that "withdrawing an employee's supervisory duties constitutes an adverse employment action." *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003) (citing *Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002)); *see also Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (noting that "reassignment with significantly different responsibilities" constitutes adverse employment action) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). Defendants do not

address this body of caselaw or attempt to distinguish it here.  Moreover, in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), the D.C. Circuit recently broadened the scope of Title VII even further.  There, the court held that the statute means what it says, and that it reaches any change that "affects an employee's 'terms, conditions, or privileges of employment.'"  *Id.* at 874; *see also Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (holding that a plaintiff-employee transferred from one job to another need only "show some harm respecting an identifiable term or condition of employment" to make out a Title VII claim).  Withdrawing an employee's supervisory duties certainly affects the "terms" or "conditions" of her employment.

Defendants next argue that Rogers fails to allege causation by stating facts showing that the company engaged in these adverse actions because of her race or sex, as required by Title VII, § 1981, and the DCHRA.  Mot. Dismiss at 7, 11–12.  According to Defendants, Rogers's allegations are "threadbare" and "devoid of factual support."  *Id.* at 11–12.  Yet the SAC contains plenty of "factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft*, 556 U.S. at 678.  Rogers alleges not only that she was compensated less than a non-Black man for taking on the same duties, *see* SAC ¶¶ 13, 18, but that company executives acknowledged that this differential existed because of her race and sex, *see id.* ¶¶ 21, 23.  She alleges that Patterson, the Chief Executive Officer, acknowledged that Black employees were paid less than white employees and that Rogers would need to manage an additional department before she could receive the same title as Aramburu.  *Id.* ¶ 21.  She additionally alleges that Smart recognized the disparate treatment.  *Id.* ¶ 23.  Despite this, Voltron took no steps to rectify the compensation disparity.  *Id.* ¶¶ 20, 24.  This is a paradigmatic example of employment discrimination.  *See Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 271

(E.D.N.Y. 2015) (denying motion for summary judgment where plaintiff showed employer paid male comparators more than her, that they were similarly situated, and that the employer knew of the pay disparity); *see also Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1082 (1983) (Marshall, J., concurring) (holding that paying women lower monthly retirement benefits violates Title VII); *Washington Cnty. v. Gunther*, 452 U.S. 161, 180–81 (1981) (holding that intentionally paying female prison staff 70 percent as much as men violated Title VII).

Rogers's description of comparators adds further plausibility to her claims. She contends that Voltron hired her to replace Aramburu, that the two occupied the same role, and that they both reported to Patterson. SAC ¶¶ 12–15. She describes Aramburu's duties managing the company's "business operations, legal, human resources, IT enterprise, finance, and communications departments," *id.* ¶ 9, and then details her own management of those departments, *id.* ¶ 15. She alleges that she and Aramburu nonetheless received different compensation. *Id.* ¶ 13. She further alleges that men at the company often received "title changes, raises, and additional equity" that they requested, whereas she did not. *Id.* ¶ 33. She also alleges that women were habitually forced out of their roles, while men—including specific individuals—were not dismissed, offering further comparators. *Id.* ¶¶ 14, 34. A plaintiff may demonstrate employment discrimination by showing that "the employer treated other employees of a different race [or sex] . . . more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). Here, Rogers "identif[ies] a discrete and focused group of comparators" to support her claim. *Daughtry v. kmG Hauling, Inc.*, No. 20-cv-3361, 2021 WL 4078686, at *7 (D.D.C. Sept. 8, 2021). This degree of factual detail is sufficient to render Rogers's employment discrimination claim plausible. *See, e.g.*,

*McNair v. Dist. Columbia*, 213 F. Supp. 3d 81, 87 (D.D.C. 2016) (concluding that plaintiff stated a claim because (1) the employer "took an adverse employment action against her" and (2) it did not "tak[e] the same action against similarly situated employees of a different race" (footnote omitted)).

Contrary to Defendants' assertions, Rogers offers much more than "occasional reference to [her] race," Mot. Dismiss at 9 (quoting *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011)), and does not "merely invoke[] her sex throughout the Amended Complaint's narrative," *id.* at 11.  Rather, Rogers states a claim for employment discrimination under which Voltron compensated her less and denied her a superior title because of her race and sex.  The Court thus denies Defendants' motion to dismiss Rogers's race and sex discrimination claims brought under 42 U.S.C. § 1981, Title VII, and the DCHRA.

### B.  Equal Pay Act Discrimination

Rogers claims that Defendants' activities additionally violated the Equal Pay Act (Count Three).  *See* SAC ¶¶ 50–56.  Defendants move to dismiss this count, arguing that Rogers has failed to state a claim under the EPA because she does not sufficiently allege that she and Aramburu engaged in "equal work," Mot. Dismiss at 15, or that she was compensated differently from members of the opposite sex, *id.* at 17.  Rogers responds that she alleges facts to support both of these requirements.  *See* Pl.'s Opp'n at 13–15.  The Court concludes that Rogers has stated a claim under the EPA.

To plead an EPA violation, a plaintiff must allege that: (1) she was "doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex"; (2) "the job was performed under similar working conditions"; and (3) she was "paid at a lower wage than members of the

12

opposite sex." *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 360–61 (D.D.C. 2014) (citations omitted). The "equal work" requirement does not mean that the plaintiff's job and that of the comparator need to be identical, but they must be "substantially equal." *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 448–49 (D.C. Cir. 1976). Courts in this circuit have recognized that the EPA "overlaps" with Title VII and that the two statutes should be "construed harmoniously with the result that the principles developed under each . . . [be] applied interchangeably" with the other. *Hardy v. Bowen*, No. 85-cv-2119, 1986 WL 15710, at *8 (D.D.C. Nov. 19, 1986) (citing *Cnty. of Washington v. Gunther*, 452 U.S. 161 (1981)).

Based on the facts alleged in the SAC, the Court concludes that Plaintiff has sufficiently alleged that Aramburu and Rogers performed substantially equal work at Voltron. "A determination of substantial equality involves an inquiry into whether the jobs are substantially related and substantially similar in skill, effort, responsibility and working conditions." *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 815 F.2d 1519, 1524 (D.C. Cir. 1987). Courts compare the actual duties of the roles rather than job descriptions or titles.[1] *See Thompson v. Boyle*, 499 F. Supp. 1147, 1165 (D.D.C. 1979). Here, Rogers alleges facts indicating not only that her position was "substantially equal" to Aramburu's role, *Laffey*, 567 F.2d at 448–49, but that they performed the *same* roles. As discussed above, Rogers alleges that she was hired to "replace" Aramburu soon after he was transferred from the position and details

---

[1] Because courts compare job duties rather than titles, Defendants cannot create daylight between Aramburu and Rogers's positions by pointing out that his title was "Chief Operating Officer" and hers was "Vice President of Operations." *See* Mot. Dismiss at 17. Instead, Defendants have "merely stated the core of Rogers's claim—when a man leads operations, Voltron calls him COO and pays him more; when a woman replaces him, Voltron calls her VP [of] Operations and pays her less." Pl.'s Opp'n at 14–15.

the company components both individuals managed.  *See* SAC ¶¶ 9, 11–13.  This is plainly sufficient to satisfy the "substantial equality" requirement of the EPA.[2]

Defendants rely heavily on *Savignac v. Jones Day* to support the notion that the SAC does not allege facts showing substantially equal work.  *See* Mot. Dismiss at 15–18.  There, a legal associate brought an EPA claim asserting that she was paid less than members of the opposite sex.  *Savignac*, 539 F. Supp. 3d 107, 109 (D.D.C. 2021).  The plaintiff alleged only that the law firm paid "her less than it paid male employees in its D.C. office for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Id.*  The court found these allegations lacking because they "merely track[ed] the statutory text," and the plaintiff provided only limited additional details on the scope of the work.  *Id.* at 117.  Yet Rogers provides several details as to the scope of her position in comparison to Aramburu, alleging that she "directly took over Aramburu's role and responsibilities" along with supervision of the specific departments he managed.  SAC ¶¶ 10, 13, 15.  To the extent that Rogers must allege "common performance requirements," *Savignac*, 539 F. Supp. 3d at 117, she shows this by alleging facts indicating that she outperformed her predecessor.  She contends that she improved operations in several departments, SAC ¶ 15, that she served as a key advisor to the Chief Executive Officer, *id.* ¶ 16, and that he told her "she was one of the best hires he had made at the company," *id.* ¶ 17.  She further alleges that Aramburu's performance was comparatively poor and that he was placed on

---

[2] Defendants assert that because Patterson later took over the company's information technology department, and the human resources department later shifted to Smart's control, that Rogers does not show substantial equality between the two roles.  Def.'s Reply at 7–8.  First, "jobs need not be identical in every respect before the Equal Pay Act is applicable."  *Laffey*, 567 F.2d at 448–49.  Second, Rogers alleges that these changes occurred after she was hired—with lower compensation and a less favorable title—which means that the evolution of her role does not vitiate the causal link to her race and sex.  *See* SAC ¶¶ 15, 23.

an "official performance improvement plan." *Id.* ¶ 11. The facts the district court found lacking in *Savignac* are thus present here.

Finally, Defendants contend that Rogers "has failed to allege facts sufficient to demonstrate that she was paid different wages than members of the opposite sex." Mot. Dismiss at 17. Her allegations that Voltron "compensated her less" are conclusory, Defendants argue. *Id.* (quoting SAC ¶ 13). A statement is "conclusory" when it "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (12th ed. 2024). Factual issues generally concern "what occurred, or why an action was taken or omitted." *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011). Rogers's statement that she "received dramatically less equity than her predecessor and the other male and non-Black VPs," SAC ¶ 18, does not make an inference, but rather captures "what occurred," *Ortiz*, 562 U.S. at 190. While Defendants may seek greater detail, courts in this district have concluded that employment discrimination complaints may survive a motion to dismiss even though they "admittedly lack[] in specifics" so long as they "allege[] the basic elements of a . . . discrimination claim." *McNair*, 213 F. Supp. 3d at 87. Rogers has done so here. For these reasons, Defendants' motion to dismiss Rogers's EPA discrimination claim must be denied.

### C. Retaliation

Rogers alleges that she experienced unlawful retaliation actionable under 42 U.S.C. § 1981 (Count Two), the EPA (Count Four), Title VII (Count Seven), and the DCHRA (Count Ten). *See* SAC ¶¶ 44–49, 57–63, 67–72, 81–84. Defendants again contend that Rogers has failed to demonstrate that there is a causal connection between her protected activity and any adverse employment action. *See* Mot. Dismiss at 12–15, 19–20. Rogers responds that her allegations demonstrate that Defendants retaliated against her after she complained to company

executives that her lower compensation and less desirable title were discriminatory. *See* Pl.'s Opp'n at 11–12. The Court concludes that Rogers states a claim for retaliation cognizable under these four statutes.

To state a case of unlawful retaliation under Title VII and § 1981, a plaintiff must show: (1) that, by opposing a practice made unlawful by those statutes, she engaged in a statutorily protected activity; (2) that her employer took a materially adverse action against her; and (3) that there is a causal relationship between the protected activity and the adverse action. *Harris*, 791 F.3d at 68; *Baker-Notter v. Freedom F., Inc.*, No. 18-cv-2499, 2019 WL 4601726, at *7 (D.D.C. Sept. 23, 2019). "The elements of a retaliation claim under the DCHRA and the EPA are the same." *Baker-Notter*, 2019 WL 4601726, at *7 (citing *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 281 n.4 (D.D.C. 2015); *Hicks v. Ass'n of Am. Med. Colls.*, 503 F. Supp. 2d 48, 51 & n.1, 53 n.4 (D.D.C. 2007)).

First, it is undisputed that Rogers's alleged complaints to management represented statutorily protected activity. "In addition to formal EEOC complaints, informal complaints of discrimination are also protected." *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 9 (D.D.C. 2013) (quoting *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007)). "To oppose a discriminatory employment practice, conduct that is statutorily protected, [a] plaintiff is required to *communicate* to [her] employer that [she] believes the employer's conduct is, in fact, discriminatory." *Brady v. United States Capitol Police*, 200 F. Supp. 3d 208, 214 (D.D.C. 2016) (quoting *Moore v. Office of the Architect of the Capitol*, 828 F. Supp. 2d 254, 257 (D.D.C. 2011)). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Here, Rogers alleges that she informed Patterson that she believed she was

experiencing discrimination in compensation and title based on her sex and race. SAC ¶¶ 21–22. She additionally alleges that she discussed the issue with Smart, the Vice President of Human Resources. *Id.* ¶ 23. These complaints thus represent protected activity in opposition to a practice made unlawful by federal employment discrimination law.

Rogers additionally alleges facts that Defendants took materially adverse employment action against her. "In the retaliation context, an action is materially adverse if it 'could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Boyd v. Dist. Columbia*, No. 22-cv-3741, 2024 WL 324109, at *6 (D.D.C. Jan. 29, 2024) (quoting *Newton v. Off. of the Architect of the Capitol*, 839 F. Supp. 2d 112, 116 (D.D.C. 2012)); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Chambers*, 35 F.4th at 876–78 (explaining that unlike discrimination claims, Title VII retaliation claims are only viable if the complained-of employment action is *materially* adverse). "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Based on this precedent, Rogers's termination plainly represents materially adverse employment action.

Even if Rogers had not been terminated, her allegation that Voltron curtailed her supervisory duties would also represent adverse employment action. Rogers contends that Patterson removed her from projects and teams she was leading, cut her out of leadership meetings, and "heavily curtailed her decision-making authority," SAC ¶ 24, as part of a "campaign to force Rogers from her job," SAC ¶ 28. The Supreme Court has noted with

17

approval that a materially adverse change in employment might include the imposition of "significantly diminished material responsibilities." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (quoting *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). In addition, the D.C. Circuit has found "an extraordinary reduction in responsibilities" with permanent effect to constitute materially adverse employment action. *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). It is further apparent that the significant reduction in supervisory duties Rogers alleges would be sufficient to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). As a result, the Court concludes that Voltron's alleged withdrawal of Rogers's responsibilities represents materially adverse employment action for the purposes of her retaliation claims.[3]

Defendants look to place the most pressure on the causation requirement, asserting that Rogers "does not allege *any* facts to support [the] inference" that she was terminated because of her employment discrimination complaint, "other than the mere temporal proximity of her

---

[3] Defendants assert that "[t]o the extent that Plaintiff is claiming discrimination based on Voltron's failure to promote her to the position of COO, this argument falls short because Plaintiff has failed to allege that she was applying to an open position at the company." Mot. Dismiss at 13 n.2. It is not apparent that a request for a title change is akin to a promotion where an individual's job responsibilities would remain the same. Yet Rogers's allegations demonstrate that the position remained open because she states that Aramburu was transferred to another role, *see* SAC ¶ 11, that she took over his responsibilities, *see id.* ¶ 13, that the Vice President of Human Resources viewed her as "basically the COO," *id.* ¶ 23, and that Rogers sought the COO title, *see id.* ¶ 30. These allegations demonstrate that the COO position and title remained available. As Defendants point out, "[a] failure to promote is an adverse action so long as there is an open position." *Alston v. Johnson*, 208 F. Supp. 3d 293, 301 (D.D.C. 2016) (citing *Yarber–Butler v. Billington*, 53 F. App'x 120, 120 (D.C. Cir. 2002); *see also Bridgeforth*, 721 F.3d at 663 (including "failing to promote" among materially adverse employment actions).

complaints of discrimination and her subsequent termination." Mot. Dismiss at 14. Defendants' argument essentially focuses on temporal proximity or purported lack thereof, citing caselaw that has held an interval of two-to-three months to vitiate causation. *See id.* (citing *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp 2d 37, 42 (D.D.C. 2013); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009)). Yet "neither the Supreme Court nor [the D.C. Circuit] has established a bright-line three-month rule." *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012). Instead, courts must "evaluate[] the specific facts of each case to determine whether inferring causation is appropriate." *Id.* at 1358. These facts might include "a pattern of antagonism leading up to the adverse action" of which the plaintiff complains. *Id.*; *see also Román v. Castro*, 149 F. Supp. 3d 157, 169 (D.D.C. 2016) ("[A] causal relationship between protected activity and adverse actions by an employer may be inferred through either temporal proximity or the existence of a pattern of antagonism." (citing *Taylor*, 571 F.3d at 1322–23)).

The SAC here describes a pattern of antagonistic activity that Defendants leave unaddressed, meaning that Rogers does not rely on temporal proximity alone. Rogers alleges that this pattern began following her May 2023 meeting with Patterson, in which she expressed that because she is a "professional black woman," she must "overperform while being underpaid and underpromoted." SAC ¶ 21. She states that "Patterson attacked [her] on email chains and Slack channels" and "undermined her in front of her team and others she needed to work with at the company." *Id.* ¶ 24. Whether or not these actions themselves represent adverse employment action, they demonstrate a pattern of activity presaging Rogers's termination. *See Hamilton*, 666 F.3d at 1358 (considering "a pattern of antagonism leading up to the adverse action" as "evidence supporting an inference of causation"). Patterson also engaged in actionable adverse employment action when he allegedly "removed [Rogers] from projects and teams she was

leading or part of, disinvited her from key leadership meetings, and heavily curtailed her decision-making authority." SAC ¶ 24; *see also Stewart*, 352 F.3d at 427. Rogers further contends that she and Patterson had a tense meeting in which he "began by expressing fury that Rogers had 'brought in'" human resources and expressed that the company had "no so-called glass ceiling." SAC ¶ 26. This pattern of antagonistic activity following Rogers's informal discrimination complaint is sufficient to state a claim that her termination less than three months later resulted from that complaint.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 31, 2024                                                          RUDOLPH CONTRERAS
                                                                                                              United States District Judge